Rahn, Appellant, *v.* Hess, Appellant.

Argued June 3, 1954.  Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Russell J. Brownback,* with him *Roger B. Reynolds, Wallace M. Keely, George K. Brecht* and *Ernest E. Heim,* for plaintiffs.

*Victor J. Roberts,* with him *High, Swartz, Childs & Roberts,* for defendants.

OPINION BY MR. JUSTICE CHIDSEY, June 28, 1954:

In April of 1926 the owners of a tract of land in West Norriton Township, Montgomery County, Pennsylvania, containing 122.508 acres, subdivided it into lots and streets according to a plan known as "Plan of Far View Farms" and thereafter lots were sold according to the plan. Through mesne conveyances, assignments of mortgage, foreclosure, sheriff's sale and deed, legal title to the tract, except for certain lots which had been conveyed by prior owners of the tract, became vested in the plaintiff Norristown-Penn Trust Company on January 3, 1940. Among the streets laid out on the plan were Joseph Street, Christopher Street, Williams Way and Rittenhouse Boulevard. Joseph Street runs north and south and is located at right angles to and enters upon Williams Way, an improved public highway. Christopher Street parallels Williams Way and intersects Joseph Street to the east and Rittenhouse Boulevard to the west.

The defendants, H. Ober Hess and Dolores G. Hess, his wife, and the plaintiffs, Oscar T. Rahn and Ruth M. Rahn, his wife, and J. Fenton Cloud and his wife, Evelyn T. Cloud, all acquired lots in the Far View Farms tract, either directly or through mesne conveyances from Norristown-Penn Trust Company. In each instance the description in the deeds made specific reference to lot number and block letter appearing upon the plan of Far View Farms, clearly identified the plan and where the lots abutted on Joseph Street or Christopher Street they were described as extending to the sides and not to the centers of these streets. The defendants own lots on both sides of Christopher Street where it intersects with Joseph Street. The individual plaintiffs' lots are located further to the west on Christopher Street.

None of the parties disputes the fact that Joseph Street south of Christopher Street and Christopher Street from Joseph Street to Rittenhouse Boulevard have not been physically opened or used by the public as public ways for a period of twenty-one years.

On or about October 27, 1952, the defendants erected two barriers or fences across the beds of Joseph Street and Christopher Street, the effect of which was to block the ingress and egress of the plaintiffs to their respective lots from Williams Way through Joseph Street and Christopher Street. The plaintiffs notified the defendants to remove these fences a short time after their erection but the defendants refused to accede to their request. On January 16, 1953 the plaintiffs brought a bill in equity wherein they prayed, inter alia, that an injunction issue restraining the defendants from maintaining these barriers or fences and from interfering with the use of Joseph Street and Christopher Street by the plaintiffs, other owners of lots in the tract, and by the public generally. The chancellor made findings of fact and conclusions of law and entered a decree nisi in which he granted a portion of the relief prayed for. He ordered the defendants to remove the barriers they had erected and restrained them from interfering with the free and uninterrupted use by the plaintiffs of their easement of ingress and egress over the beds of these streets. However, he concluded that by virtue of the Act of May 9, 1889, P. L. 173, 36 PS §1961, all rights *of the public* in the plotted streets were terminated since they had not been accepted or used by the public for twenty-one years and could not be opened as public streets over the land abutting the lots of the defendants without their consent. Exceptions filed by the plaintiffs and defendants to this adjudication were dismissed by the court en banc which directed that the decree nisi become the final judgment of the court.

From that final decree both the plaintiffs and defendants have appealed.

The determination of the issues involved depends upon the interpretation and effect of the Act of 1889. This statute is entitled "AN ACT Relating to unused streets, lanes and alleys." and provides, ". . . Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons, in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out."

We have uniformly held that where an owner of land subdivides it into lots and streets on a plan and sells his lots accordingly, there is an implied grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of them to public use. The right passing to the purchaser is not the mere right that he may use the street, but that all persons may use it: *Quicksall et al. v. The City of Philadelphia,* 177 Pa. 301, 304, 35 A. 609; *Snyder et al. v. Commonwealth,* 353 Pa. 504, 506, 46 A. 2d 247. Prior to the Act of 1889 no limitation of time was imposed on the public for perfecting the dedication by their acceptance: *State Road,* 236 Pa. 141, 144, 84 A. 686. The Act fixed a time limit within which an acceptance by the public must take place. If the offer was not so accepted within twenty-one years after the dedication, the public's right to accept was foreclosed: *Milford Borough v. Burnett,* 288 Pa. 434, 440, 136 A. 669.

The plaintiffs argue that the Act of 1889 only applies to the municipal authorities and does not affect the

implied covenant that streets appearing on a subdivision of lots shall always be open to public use, and therefore the lot owner may now enforce this implied covenant despite the statutory limitation. If we were to adopt the plaintiffs' reasoning, the purpose of the Act could readily be defeated. Its purpose was to relieve land upon which streets have been laid out by the owners, but not used, from the servitude imposed: *Philadelphia Electric Co. v. Philadelphia,* 303 Pa. 422, 432, 154 A. 492. The enactment is actually a statute of limitation applicable to any and all seeking to assert the public character of a street, be they the municipal authorities or the individual lot owners. In *Scott v. Donora Southern Railroad Company,* 222 Pa. 634, 642, 72 A. 282, this Court said in discussing the Act: ". . . After the statutory period, therefore, if no action has been taken to subject the street to *public* use, *the servitude imposed by the owner upon his land for such use is removed, and the street is of no force or effect as a public highway. The land is discharged from such servitude and the dedicated portion of it has entirely lost its character as a public street.".* (Emphasis supplied).

Plaintiffs' other contention that under the Act of 1889 the subdivider merely makes an offer to dedicate the streets on his subdivision to public use, that title to the streets remains in him and at the end of twenty-one years he still has the option of rededicating the streets to public use or retaining the fee in himself, is equally untenable. The Act provides that a plotted street shall not be opened after twenty-one years ". . . without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.". We think it clear that the "owner or owners" whose consent is required, refers to the abutting lot owners. They acquired the fee in the streets. The subdivider divested

himself thereof by his deeds to them or their predecessors in title, and he had no fee to "rededicate".

It is settled law in Pennsylvania that where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of it, if the grantor had title to that extent, and did not expressly or by clear implication reserve it: See *Paul v. Carver*, 26 Pa. 223; *Cox v. Freedley*, 33 Pa. 124; *Saccone v. West End Trust Company*, 224 Pa. 554, 560, 73 A. 971. The reasons for the rule were set forth by Mr. Chief Justice LEWIS in *Paul v. Carver*, supra, at p. 225: ". . . Where land is laid out in town lots, with streets and alleys, the owner receives a full consideration for the streets and alleys in the increased value of the lots . . . If the streets were to be vacated, of what value would they be to the original grantors, unless for the purposes of annoyance to the lot owners? A long strip of ground fifty or one hundred feet wide and perhaps several miles in length, without any access to it except at each end, is a description of property which it is not likely either party ever contemplated as remaining in the grantor of the lots on each side of it. Influenced by these considerations, the law has carried out the real intention of the parties by holding that the title passed to the centre of the street subject to the right of passage. Where a street is called for as a boundary it is regarded as a single line. The thread of the road is the monument or abuttal: . . .". Since there was no reservation or restriction by the subdivider in the present case, the fee to the center of the street formed an integral part of the estates acquired by his grantees and their successors in title, unless some modification was brought about by the Act of 1889. Statutes are never presumed to make any innovation in the rules and principles of the common law or prior existing law beyond what is expressly declared in their provisions:

*Gratz v. Insurance Co. of North America,* 282 Pa. 224, 234, 127 A. 620; *Szilagyi et al. v. Bethlehem,* 312 Pa. 260, 267, 167 A. 782. Neither the title nor the body of the Act in question reveals any intention by the Legislature to change the substantive law in this regard.

The only other issue presented for our consideration is whether the Act of 1889 terminated private easements as well as public rights in the street, as contended by the defendants. The precise question has never been passed upon by this Court, but we have recognized a clear distinction between the public right of passage over dedicated streets and the individual rights of property involved in such dedication. The latter are private contractual rights resulting as a legal consequence from the implied covenants under which the grantees purchased, and as such are not affected by the failure of the municipalities to act upon the dedication: See *Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co.,* 240 Pa. 519, 522, 87 A. 968; *O'Donnell v. Pittsburgh,* 234 Pa. 401, 410, 83 A. 314. In *Carroll v. Asbury,* 28 Pa. Superior Ct. 354, 359, it was said that ". . . The right which the plaintiff acquired to use the street was not, however, dependent upon the acceptance or rejection by the public of the dedication. . .". There is also language by this Court in *Mitchell v. Bovard et al.,* 279 Pa. 50, 123 A. 588, which indicates that we have recognized the inapplicability of the Act of 1889 to the private contract between the grantor and his grantee. Mr. Justice SADLER, speaking for the Court at p. 53 states that "In so far as the public is concerned, any privileges which it might have secured were lost by a failure to take over the highway within twenty-one years, since our statute so provides: Act May 9, 1889, P. L. 173; Stivason v. Serene, 80 Pa. Superior Ct. 1. The indi-

vidual purchasers of lots, however, acquired rights which are entitled to protection, unless in some legally recognized way the easement has been surrendered. . . ." Although this statement by Mr. Justice SADLER may be considered dictum only because it was not necessary for the decision of the case, we subscribe to the distinction drawn by him for we find nothing contained within the provisions of the Act of 1889 denoting any intent to affect purely private rights.

The decree is affirmed, all costs of each appeal to be paid equally by appellants and appellees therein.