## Morrissey Construction Co., Inc. v.
## Cross Realty Co. (No. 2)

*High, Swartz, Roberts & Seidel* and *Schnader, Harrison, Segal & Lewis*, for plaintiff.

*Henderson, Wetherill & O'Hey* and *Wolf, Block, Schorr & Solis-Cohen*, for defendants.

GROSHENS, P. J., February 11, 1969.—On March 6, 1964, an apportioned mechanic's lien claim was filed by Morrissey Construction Co., Inc. (hereinafter called "Morrissey") on 83 separate houses in a housing development known as "Highland Gardens," Lansdale, Montgomery County, Pa. The liens asserted

that a balance was due for work done and material supplied to the entire development, and that a fraction thereof was due from each homeowner on an apportioned lien basis. The complaints were filed February 24, 1966. On February 20, 1967, after argument before the court en banc, the preliminary objections of defendants were dismissed. The case proceeded to trial on June 18, 1968, and oral argument was held on October 4, 1968. The matter is now before us for disposition.

## FINDINGS OF FACT

1. Plaintiff, Morrissey, furnished excavation, paving, sewer and certain sidewalk construction for a housing development known as "Highland Gardens" in Lansdale Borough (hereinafter called "borough") Montgomery County, Pa.

2. Defendant, Cross Realty Co. (hereinafter called "Cross") laid out and developed "Highland Gardens" as a unified project of 83 semi-detached dwelling houses, including public improvements.

3. Cross is a Pennsylvania corporation, of which Leonard Polis (hereinafter called "Polis") and his wife, Eleanor Polis, are president and secretary, respectively, and the principal stockholders.

4. Defendants, Leo W. and Helene D. Gable (hereinafter called "Gables") are the owners of lot no. 11 and the house erected thereon which they purchased from Cross.

5. The subdivision plan for "Highland Gardens," dated December 1, 1961, was approved by the borough on December 8, 1961, and duly recorded.

6. On November 30, 1961, Morrissey submitted a written proposal to Cross to furnish labor, equipment and materials for clearing, excavating, curbing, paving and sewer work, which was accepted by Cross prior to January 16, 1962, the date the work commenced.

7. A waiver of liens dated December 1, 1961, between Cross as owner and Leonard Polis as contractor, was filed December 5, 1961, in the office of the Prothonotary of Montgomery County at no. 61-2450.

8. On January 15, 1962, a deed of dedication for certain public streets, dated December 12, 1961, from Cross to the borough was duly recorded.

9. On August 6, 1962, another deed of dedication for certain public streets, dated July 10, 1962, from Cross to the borough was duly recorded.

10. On November 1, 1962, the borough duly adopted ordinance no. 779, which located, laid out, extended and placed upon the borough map the various streets of Highland Gardens, theretofore dedicated.

11. On November 7, 1962, the Gables bought lot no. 11, 520 Cherry Street in Highland Gardens.

12. Morrissey performed the work specified in the written proposal dated November 30, 1961, and also performed in a continuous manner certain extra work set forth in certain invoices to Cross dated: June 13, 1962; October 10, 1962; May 10, 1963; September 20, 1963, and November 30, 1963.

13. The written proposal, dated November 30, 1961, quoted a contract price of $64,000, and the invoices for extra work total $21,148.31, against which Morrissey admits credit for payments totalling $27,748.65, leaving a net balance of $57,399.66.

14. Apportioning the net balance of $57,399.66 among the 83 lots in Highland Gardens, results in a claim of $691.56 for each lot, the amount of the claim in the mechanic's lien complaint against lot no. 11, 520 Cherry Street, owned by the Gables.

15. By stipulation, a credit of $250 is allowed for each lot, by reason of certain funds on deposit with Cayuga Federal Savings and Loan Association, which reduces the stated claim for each of the 83 lots to

$441.56, with interest from November 9, 1963, to June 18, 1968, of $121.43, making a total claim of $562.99 per lot.

16. On August 23, 1963, in compliance with ordinance no. 442, the borough engineer of Lansdale filed his certificate with the borough council, certifying that all of the work required to be performed for street improvements in Highland Gardens had been completed.

17. The Gables did not contract with anyone to perform any of the work for which the lien in this case was filed.

18. Written notice of the filing of the mechanic's lien claim on March 6, 1961, was served upon the Gables, owners of the property at the time the claim was filed, within one month after filing the claim, and, within 20 days after such service, an affidavit of service of notice was filed.

19. On March 31, 1964, Cross filed a petition under chapter X of the Bankruptcy Law in the United States District Court for the Eastern District of Pennsylvania at no. 28305, and has been adjudicated a bankrupt. On April 21, 1966, Leonard Polis and Eleanor Polis, his wife, officers of Cross, individually and jointly filed a voluntary petition in bankruptcy in the said district court at no. 29325, and have been adjudicated bankrupt.

## DISCUSSION

Morrissey furnished labor and materials for excavation, grading, street and sidewalk paving and the installation of sanitary and storm sewers and driveways for the housing development of "Highland Gardens." This work began January 16, 1962, and was completed November 9, 1963. The original owner and developer, Cross, having gone bankrupt, Morrissey seeks to recover the unpaid balance for this work

from the individual homeowners. Defendants, the Gables, are the present owners of one of the homes and, as agreed to by counsel, our decision on this case will control the disposition of the liens on the other houses.

The Gables have asserted four defenses. Primarily, they contend that the nature of the work is not lienable. Secondly, they contend that neither they nor their grantor owned the property on which the work was furnished. Thirdly, they claim that a valid waiver of liens was filed which bars Morrissey's lien. Finally, it is maintained that the lien claim was filed too late.

The right to file a mechanic's lien is incorporated in section 2 of the Act of June 4, 1901, P. L. 431 (former title 49 PS §21), and it is codified in section 301 of the Mechanics' Lien Law of August 24, 1963, P. L. 1175, 49 PS §1301, which provides:

"Every improvement and the estate or title of the owner in the property shall be subject to a lien, to be perfected as herein provided, for the payment of all debts due by the owner to the contractor or by the contractor to any of his subcontractors for labor or materials furnished in the erection or construction, or the alteration or repair of the improvement. . . ."

Section 201, 49 PS §1201, the definitional section provides:

"(1) 'Improvement' includes any building, structure or other improvement of whatsoever kind or character erected or constructed on land, together with the fixtures and other personal property used in fitting up and equipping the same for the purpose for which it is intended.

"(2) 'Property' means the improvement of the land covered thereby and the lot or curtilage appurtenant thereto belonging to the same legal or equitable owner reasonably needed for the general purposes

thereof and forming a part of a single business or residential plant. . . .

"(12) 'Erection, construction, alteration or repair' includes:

"(a) Demolition, removal of improvements, excavation, grading, filling, paving and landscaping, when such work is incidental to the erection, construction, alteration or repair;

"(b) Initial fitting up and equipping of the improvement with fixtures, machinery and equipment suitable to the purposes for which the erection, construction, alteration or repair was intended; and

"(c) Furnishing, excavating for, laying, relaying, stringing and restringing rails, ties, pipes, poles and wires, whether on the property improved or upon other property, in order to supply services to the improvement."

The pivotal point in this case is whether Morrissey can recover payment from the Gables for street and sidewalk work done on public improvements in the housing project. In other words, should the individual homeowners be compelled to pay for work done on the streets in their housing development?

Morrissey insists that the entire housing development is an "improvement" according to the Mechanics' Lien Law of 1963, supra, and that the street work is a necessary part of this improvement, and thus lienable. At first blush, this would appear to be true. The detailed enumeration of improvements in the Act of 1901 has been omitted by the present act, and improvement is defined as ". . . any building, structure or other improvement of whatsoever kind or character erected or constructed on land. . . ." Such general language would seem, then, to include a housing development such as Highland Gardens.

However, in the comments to section 201, Subsection 1, supra, the Joint State Government Commission

explicitly stated that the language used "is not intended to abridge or enlarge the right to lien." See note 49 PS, chapter 6.

Similarly, the commission, commenting on section 201, subsec. 12(a), supra, stated that the section "declares existing decisional law with respect to such work upon the ground as demolition, grading, landscaping which is incidental to the erection, construction, alteration or repair of an improvement. . . ."

Thus, the Mechanics' Lien Law of 1963 is not intended to enlarge the right to lien.[1] In addition, existing case law must play a prominent role in validating liens for landscaping, and in our case, excavating and street work.

The Pennsylvania Supreme Court has touched on this area of law only three times. None of these cases is favorable to Morrissey. In Yearsley v. Flanigen, 22 Pa. 489 (1854), the court held that a mechanic's lien for work done on a building may be extended to include the pavement work where the original contract included the pavement work. This case is markedly different from the case at bar. The claim for the pavement work was included in the lien for work done on the building. The lien was limited to where the pavement was appurtenant to the building, and a part of the parties' original contract or agreement. No mention was made of the possibility of the validity of a lien

---

[1] In the past, many cases, some cited by counsel, have invalidated liens solely because article III, sec. 7, of the Pennsylvania Constitution of 1874 provided: "The General Assembly shall not pass any local or special law: authorizing the creation, extension or impairing of liens. . . ."

On May 16, 1967, this section of the Constitution was amended and renumbered article III, sec. 32, and it contains no such prohibition. This may be a harbinger of future legislative extensions of liens, but we must confine ourselves to the Mechanics' Lien Law of 1963. See PS Constitution pocket part 1967, art. 3, sec. 32.

for pavement work alone. The court, in effect, said that if the parties agree to include the pavement work as part of the contract, a lien will lie. However, the implication is that such a lien must be included in the agreement to be valid. Considerable elasticity would be needed to stretch the holding of this case to the instant case. The pavement lien was held valid in the Yearsley case because it was a part of the contract for the work done on the building. Here, Morrissey did no work at all on the Gables' house, or any house in the development. In addition, the improvement in Yearsley v. Flanigen was a single building. Here, we are asked to consider an entire community of 83 homes as one "improvement."

In Owen & Salter v. Johnson, 174 Pa. 99 (1896), the court acknowledged that plumbers are specifically within the enumerated class of persons entitled to a mechanic's lien. The court stated that plumbing was a part of the construction of the building and not merely for convenience and adornment. This case merely acknowledged that plumbing was specifically included by statute in the class of work for which a mechanic's lien would be valid. No such provision ever existed for street work.

In Bradley v. Gaghan, 208 Pa. 511 (1904), the court upheld, in a per curiam opinion, a referee's decision to invalidate liens for sidewalk construction. Although the court did not elaborate on the referee's opinion, it is interesting to note that the referee flatly stated that no lien may be filed for materials furnished for sidewalks. He cited Clymer Paving Co. v. Donegan, 36 W.N.C. 261 (1895), which stated emphatically, at page 263:

"Since, then, the building may be complete without any pavement, and the pavement may be and often is required to be laid without reference to the building, and *since, when it is laid, it becomes a part of the*

*public highway, we think it cannot be properly regarded as laid in the erection and construction of the building.*" (Italics supplied.)

These decisions reveal that although the court has not explicitly denied that street work is a child of the Mechanics' Lien Law, it has made no move to legitimize or adopt it. This fact is even more significant when we realize these decisions were dealing only with the street work adjacent to a single building. In the instant case, we are asked to consider as lienable all the streets in the housing development. This is quite a leap from the single building, adjacent street problem. It is a nice analogy, but mechanics' liens are a specialized area of the law. And no cases even support the limited concept of street work adjacent to a building, unless the work was included in the original building contract. See Yearsley v. Flanigen, supra.

In addition, we find it difficult to understand how the Gables own the streets for purposes of the Mechanics' Lien Law. Morrissey contends that the Gables own to the center of the street, and cites Rahn v. Hess, 378 Pa. 264 (1954), where the court held:

"It is settled law in Pennsylvania that where the side of a street is called for as a boundary in a deed, the grantee takes title in fee to the center of it, if the grantor had title to that extent, and did not expressly or by clear implication reserve it."

The Gables contend that the grantor, Cross (the owner of "Highland Gardens") had already conveyed the streets to the Borough of Lansdale before they purchased their house, and thus they never owned the street. We cannot agree with this contention. Even though two deeds of dedication were recorded, and the streets opened prior to the Gables' purchase, these acts must only be considered as offers to dedicate the streets because ordinance no. 422 provided that a formal resolution would be necessary for ac-

ceptance. The borough approved and recorded the subdivision plan of "Highland Gardens" on December 8, 1961. The plan was approved pursuant to ordinance no. 422 which is the subdivision ordinance of the Borough of Lansdale. Section 2 of the ordinance provides:

"Every street, park, or other improvement shown on a subdivision plan that is recorded as provided herein, shall be deemed to be a *private street*, park or improvement *until such time as the same has been offered for dedication and accepted by ordinance or resolution.*" (Italics supplied.)

The Gables purchased their home November 7, 1962. The streets were not accepted by ordinance until August 23, 1963. Thus, according to Rahn v. Hess, supra, the Gables received title in fee to the center of Cherry Street.

However, is this the type of ownership to which a mechanic's lien should be applied? Was there ever any doubt that Cherry Street was destined to be formally accepted by the Borough of Lansdale? Formal acceptance was withheld only to guarantee that Cross and Polis would comply with the work standards for borough streets. We do not think that this kind of limited ownership is sufficient for mechanic's lien purposes. The streets were paved for public use, and have been ultimately accepted and used by the public.

Most of the lower court cases cited by counsel have a common theme running through them, hesitation regarding extension of liens. Although article III, section 7,[2] of the Constitution was one of the reasons for this negative outlook, we feel constrained to adopt such conservatism in the instant case. Most of these cases were decided under the Mechanics' Lien Law

---

[2] As mentioned supra, this restriction no longer exists.

of June 16, 1836, P. L. 695 as amended, and it is enlightening to look at section 2 regarding valid mechanics' liens:

"The lien of such debt, shall extend to the ground covered by such building, and to so much other ground immediately adjacent thereto, *and belonging in like manner to the owner of such building, as may be necessary for the ordinary and usual purposes of such building.* . . ." (Italics supplied.)

It is obvious, here, that the street is not "owned in like manner" by the owners of the building. And, although the streets may be necessary for travel, they are not necessary "for the ordinary and usual purposes of (the) building." The Mechanics' Lien Law of 1963 has not indicated that it intends a change in prior law. In fact the official comments purposely affirm prior law. Consequently, we find that the liens are invalid with respect to the street work in "Highland Gardens."

We must still concern ourselves with Morrissey's claim for the installation of the private driveway. The Gables do not contend that this is an improper subject for a mechanic's lien, but they maintain that there was a valid waiver of liens which bars the claim, and that the lien was filed too late. Both of these contentions are without merit.

The purported waiver of liens was signed Cross Realty Co. by Leonard Polis, President, and Eleanor Polis, Secretary, "owner," and Leonard Polis, "contractor," dated December 1, 1961, and filed December 5, 1961. The waiver provided that the contractor "in consideration of the contract aforesaid" agrees that no mechanic's lien or claim or other lien shall be filed or maintained against the buildings or the property. No such contract between Cross and Polis existed.

Section 402 of the Mechanics' Lien Law of 1963,

supra, 49 PS §1402, provides for a waiver of liens as follows:

"A written contract between the owner and contractor or a separate written instrument signed by the contractor, which provides that no claim shall be filed by anyone, shall be binding. . . ."

The word "contractor" is defined in section 201, 49 PS §1201:

"(4) 'Contractor' means one who *by contract with the owner,* express or implied, erects, constructs, alters, or repairs an improvement or any part thereof or furnishes labor, skill or superintendence thereto. . . ." (Italics supplied.)

There is no evidence of such a contract between Cross, the owner, and Polis as a contractor. Polis, himself, testified that he acted as an agent for Cross at all times. Polis was never paid as a general contractor. He, in turn, made no payments to any subcontractors. Instead, Cross Realty Co. made all payments.

Polis also testified that he considered the purported waiver as a "formality paper" which he signed at settlements from "force of habit." Such a "waiver" should not forfeit the rights of a contractor who furnished labor and material in good faith.

Thus, in order for there to be a binding waiver, the Act of 1963 requires that there be a contract between the owner and the contractor. In addition, section 407 of the Act of 1963, 49 PS §1407, provides as follows:

"*A contract for the improvement made by the owner with one not intended in good faith to be a contractor shall have no legal effect* except as between the parties thereto, even though written, signed and filed as provided herein, *but such contractor, as to third parties shall be treated as an agent of the owner.*" (Italics supplied.)

The evidence clearly establishes that Polis never

acted as a contractor. This is confirmed by the books of Cross. We must conclude that no "good faith" contract ever existed, and that Polis was but an agent of Cross, the owner.

The law in Pennsylvania is clear that an agent can bind his undisclosed principal even though the contract appears on its face to be the contract of the agent. In The Youghiogheny Iron & Coal Co. v. Smith, 66 Pa. 340 (1870), the court stated, at page 343:

"It may certainly be now regarded as a point settled, beyond all possible controversy, that if an agent, duly authorized, makes a contract in his own name, without disclosing his principal, and even when such principal is entirely unknown to the other contracting party, he is nevertheless bound, and damages may be recovered of him in an action for its breach. . . ."

Thus, the "waiver" is a nullity, and Cross Realty Co., and hence the Gables, are responsible for the Morrissey contract regarding the driveway.

Finally, the Gables allege that the lien was filed too late. They base this argument on the consolidation and apportionment provisions of section 306 of the Mechanics' Lien Law of 1963, which provides as follows:

"(a) Consolidation of Claims. Where a debt is incurred for labor or materials furnished continuously by the same claimant for work upon a single improvement but under more than one contract, the claimant may elect to file a single claim for the entire debt. In such case, 'completion of the work' shall not be deemed to occur with respect to any of the contracts until it has occurred with respect to all of them.

"(b) Apportionment of Claims. Where a debt is incurred for labor or materials furnished by the same claimant for work upon several different improvements which do not form all or part of a single business or residential plant, the claimant shall file sep-

arate claims with respect to each such improvement, with the amount of each claim determined by apportionment of the total debt to the several improvements, and in such case, the amount of each separate claim may be less than five hundred dollars ($500), provided that the total debt exceeds five hundred dollars ($500). In no other case shall an apportioned claim be allowed."

The Gables contend that Morrissey cannot file an apportioned lien under section 306(b) and still reap the benefits of section 306(a); i.e., be able to file the liens after completion of work on the entire project. They contend that if section 306(a) is applicable, Morrissey must file the liens within four months of the completion of each house. They also contend that the liens are "secret" liens and thus invalid. We do not agree with these contentions. Section 52 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS §552, provides, in part:

"In ascertaining the intention of the Legislature in the enactment of a law, the courts may be guided by the following presumptions among others:

"(1) That the Legislature does not intend a result that is absurd, impossible of execution, or unreasonable. . . ."

Prior to the Mechanics' Lien Law of 1963, a single claim could not be filed against a group of dwelling houses to which the claimant had furnished labor or materials because they did not constitute a "plant," and a separate lien had to be filed against each building on the basis of an apportionment of the total claim: Todd v. Gernert, 223 Pa. 103 (1909). Separate claims were required because the Act of 1901, sec. 12, 49 PS §54, provided:

". . . a single claim may be filed against more than one *structure* or other improvement if they are all intended to form part of one plant." (Italics supplied.)

The comments to section 306(b) of the Act of 1963 reaffirm Todd v. Gernert:

"The use of the words 'residential plant' is not intended to change the previous law that a single claim cannot be filed against an entire row of separate residential dwellings." (Italics supplied.)

Thus the words "several different improvements" used in section 306(b) of the Act of 1963 must be construed to have the same meaning as "more than one *structure* or other improvement" contained in section 12 of the Act of 1901. Morrissey contends each house is a separate structure or building, not a separate improvement, and that he filed an apportioned lien to comply with Todd v. Gernert. However, he considers "Highland Gardens" as one improvement and contends that the liens may be filed after completion of the work on the entire development, under section 306(a).

For the limited purpose of construing sections 306(a) and (b) we agree that "Highland Gardens" should be considered one improvement, and that the liens can be filed after the entire development is completed. To do otherwise would burden Morrissey and other contractors and subcontractors with an unreasonable and onerous yoke of procedure. Morrissey must file an apportioned lien to conform with existing law. To require that a contractor, who is continuously working on a construction project under more than one contract, file a lien after completion of the work under each contract, as the Gables request, would create misunderstanding, confusion and animosity between the contracting parties. We do not think the legislature intended such an unreasonable result.

This same reasoning applies to the Gables' contention that the liens must be filed within four months of the completion of each house. See Merritt Lumber Yards, Inc. v. G.E.B. Enterprises, Inc., 22 D. & C. 2d 39, as authority for their contention.

It is settled law in Pennsylvania that the statutory policy permitting apportioned liens is to afford a remedy for cases where it is impossible to specify the nature or dates that materials or labor were furnished to individual houses. See Sumption v. Rogers, 242 Pa. 348 (1913). Nowhere is the need for this policy more necessary than in the housing development area. It is actually impossible for a supplier of materials to a housing development, and it is practically impossible for a subcontractor furnishing labor, to identify with any certainty what materials or what labor entered into a particular house, and the exact date on which this occurred. If the Gables' contention is upheld, a subcontractor furnishing labor must keep detailed records of the quantity, character and time that work was furnished to each particular structure in the project. And, a materialman only knows that materials were delivered to the construction site, and has no way of determining which structure received his material. Such impossible requirements and absurd result cannot have been intended by the Mechanics' Lien Law.

Finally, the Gables contend that permitting a lien to be filed at the end of the entire job results in a secret lien. The facts belie this interpretation. "Highland Gardens" was planned, recorded, advertised and built as a single project. Construction did not proceed on one house to completion, but upon groups of houses, by trades working consecutively, one following the other. Anyone who purchased a house, as well as their mortgagees and title searchers, could not help knowing that the work being done would not be finished until the project was finished. This was not one house being built, but an entire development. The Gables knew, or should have known, of the possibility of such a lien regarding work done on their premises.

Thus, the mechanic's lien is valid as far as it pertains to the cost of the installation of the private driveway.

## CONCLUSIONS OF LAW

1. Street work is not the type of work which supports a mechanic's lien claim;

2. Streets are not owned by defendants for the purposes of a mechanic's lien claim;

3. The waiver of liens is a nullity;

4. The mechanic's lien claim was not filed too late, and

5. The work on the Gables' driveway is subject to the mechanic's lien claim.

## DECREE NISI

And now, February 11, 1969, it is hereby ordered, adjudged and decreed:

1. That the mechanic's lien claim as it pertains to labor and materials for street paving and related work in a housing development known as "Highland Gardens" is invalid.

2. That the mechanic's lien claim as it pertains to the private driveway installation on the Gables' property is valid.

3. That the costs of this proceeding are to be equally divided between plaintiff and defendant.