BODLEY, J.,
ADJUDICATION AND DECREE NISI
This equity action involves the legal status of a paper street located in Bristol Township, this county, as platted in a recorded plan of lots known as “Plan of Headley Manor.” Coordinately, it concerns the rights of the respective parties to this action, and the public generally, to use the same as a street. Plaintiffs, by their complaint, seek to enjoin defendants from using that part of the street involved which is physically *511 located upon their respective lots. In turn, defendants, by way of counterclaim, ask that plaintiffs be enjoined from interfering with their alleged right to use the street and from obstructing the way in any fashion. Hearings have been held and counsel have submitted requests for findings of fact and conclusions of law as well as briefs in support of their respective positions. Set forth hereunder is a narrative of those facts, as found by the chancellor, which are deemed necessary for the determination of the issue.
The plan of lots entitled “Plan of Headley Manor,” bears date of October 31, 1910, and was recorded November 3, 1910, in the office for the recording of deeds of this county in deed book 356, at page 640. Upon the plan, one finds 78 lots and a number of streets laid out, including Cedar Lane, the subject of this dispute. Cedar Lane runs, generally, in a northerly-southerly direction between lots nos. 36 and 45, owned respectively by plaintiffs Mannherz and Martin. So far as it may be here pertinent, it can be said that Cedar Lane begins at the southerly side of Edgely Avenue and proceeds in a southerly direction bisecting Woodside Avenue, upon the southerly side of which plaintiffs have their homes. It then extends across portions of plaintiffs’ lands to join Pennsylvania Avenue, which runs in an easterly-westerly direction, one block to the rear of plaintiffs’ respective properties.
It appears to be undisputed that Edgely Avenue, Woodside Avenue, and that portion of Cedar Lane between Edgely and Woodside Avenues have been used and accepted as public streets for many years. However, the extension of Cedar Lane, since renamed Curtis Avenue, between Woodside and Pennsylvania Avenues has never been taken over by the Township of Bristol nor improved as a public street. When plaintiffs Mannherz purchased their home in 1946, and also *512 when plaintiffs Martin purchased their home in 1964, the portion of Cedar Lane (which we shall hereinafter refer to as Curtis Avenue) running between their lots bore no outward manifestations of any such use as might lead one to believe that it was, in fact, a street. There is substantial dispute among the parties as to what, if any, use this area was put to prior to the year 1966, but it is clear that the area had not been used continuously over the years for either vehicular or pedestrian traffic.
During the years 1965, 1966, and 1967, each of the defendants, at various times, and individually, acquired title to certain lots as shown on the Plan of Headley Manor. All such lots were located to the rear or the south of plaintiffs’ respective lots. The dispute between plaintiffs and the various defendants was generated in the latter part of November 1966, when Edgely Developers, Inc., and defendant Camerlengo secured building permits and began construction of industrial buildings upon their lands. At this time, trucks bearing materials and vehicles transporting workmen began passing daily from Woodside Avenue over that area of Curtis Avenue situated between the Mannherz and Martin properties in order to reach the construction sites. As a result of this new, and no doubt aggravating, use of that area of Curtis Avenue now in dispute, plaintiffs eventually filed a complaint in equity seeking to enjoin defendants’ further use of this area as a way and alleging that defendants, being without right to use this land as a means of ingress and egress to their lots, were trespassing upon plaintiffs’ land.
Hearing on the matter was set for June 26, 1967, but, before that date arrived, defendants filed an answer, new matter and counterclaim alleging, inter alia, that plaintiffs, without right, had blocked de *513 fendants’ passage over the street by placing trucks, poles and vicious dogs in the area, thus preventing defendants’ access to their lots. Under these circumstances, defendants prayed for and were granted a preliminary injunction restraining plaintiffs from obstructing the street until further order of the court, and requiring the removal of all barriers in order that defendants might continue to have access to their land.
Hearings were held June 26, July 5, and October 30, 1967, at the conclusion of which the court directed counsel to file memoranda of law together with their respective requests for findings of fact and conclusions of law.
Communications between the court and counsel revealed that serious settlement negotiations were engaged in for a protracted period of time. It becoming apparent that settlement could not be effected, counsel then requested that the chancellor dispose of the case by way of adjudication, and the requested memoranda and findings finally came to the chancellor in late September 1969.
As indicated heretofore, the disputed portion of the paper street, Curtis Avenue, has never been accepted by the Township of Bristol in any formal manner. It has never been paved, improved or maintained by that municipality. Testimony offered on behalf of defendants revealed that in the years following 1910, the year in which the Plan of Headley Manor was prepared and recorded, this portion of Curtis Avenue was used from time to time by Headley Manor lot owners, and perhaps others, for many purposes, including a foot-way to the rear fields for hunting purposes, the dumping of trash, parking of automobiles, strolling, occasional access for fire trucks and police vehicles, and for diverse other purposes. A 1965 aerial photo and *514 certain testimony from witnesses indicated that tire tracks appeared in the dirt at one time or another.
On the other hand, a witness called by plaintiffs testified that he had lived in the Headley Manor area for some 56 years, his parents having been one of the original lot owners in the development. This witness maintained that the area in question was “just part of the field”; that it was just “fields and brush”; that there were no fences in the area and that as a child, he and others “roamed all over” the area. The witness further stated that the only additional use to which this land area was put by anyone prior to the early 1930’s was that of the owner of lot no. 34, one lot removed from plaintiffs Mannherz, who was accustomed to drive his car over the area in order to reach his garage in the rear of the property. He told us that there were no barricades erected upon this land at any time until possibly the 1950’s.
As we will note shortly hereafter, the only period of time of concern to the court was the period of 21 years following the recording of the Plan of Headley Manor. Although voluminous testimony was received from both sides of the case respecting the use or nonuse of the Curtis Avenue area in question, the chancellor concludes from all of this testimony that until long after 1931, Curtis Avenue was traversed only upon infrequent occasions and in such instances the persons using the area were, for the most part, lot owners. There is no evidence in this record of continuous public use of Curtis Avenue during the critical 21-year period.
Although defendants initially attacked plaintiffs’ complaint on the theory that equity had no jurisdiction, since plaintiffs might have filed an answer to quiet title, we take it that this position has been abandoned by defendants by virtue of their seeking and securing *515 equitable relief when plaintiffs interfered with their alleged right of ingress to the area of their lots. Defendants are wrong in this contention. The kernel of this controversy is not one of title, but one of easement, offer of dedication and acceptance or nonacceptance thereof. And the existence of a complete and adequate nonstatutory remedy is not a jurisdictional defect, but rather one relating to form of action which must be pursued by way of preliminary objection: Carelli v. Lyter, 430 Pa. 543, 546-47 (1968). We would hold in any event that under the facts of this case it is not enough to say that plaintiffs had a remedy at law, since any remedy which might have been afforded by an action to quiet title would have still left these plaintiffs, if successful, in need of injunctive relief. The remedy provided on the law’s side must be an adequate and complete one, not merely some remedy. See Schrader v. Heath, 408 Pa. 79 (1962). And if a remedy at law is inadequate as to a part of the proceedings, equity will take jurisdiction over an entire case in order that justice might be done and piecemeal litigation avoided: White v. Young, 409 Pa. 562, 566 (1963).
All parties to this action acquired their respective lots by way of deeds of conveyance, which referred to the Plan of Headley Manor and the streets thereon as laid out October 31, 1910. Although a multitude of cases involving problems similar to the one before us have reached our appellate courts, the factual background differs from case to case, and although the law appears to be clear, each case necessarily is sui generis.
Where an owner subdivides land into lots and streets on a plan and sells such lots accordingly, it is held that there is an implied grant or covenant to the purchaser that the streets will be forever open for the use of the public. In such case, the sale of lots according to a plan operates as a dedication of the streets *516 to public use. The right granted thereby is not merely the right of the lot owner to use the street, but the right of the public, generally, to so use: Rahn v. Hess, 378 Pa. 264, 268 (1954).
The sale of lots in this manner therefore has a twofold legal significance. First, it operates as an offer of dedication to the public of the platted streets; and second, it constitutes an implied grant of an easement over the streets to all of the grantees and their successors in title. This easement is independent of the dedication of the platted streets to the public use: Cohen v. Simpson Real Estate Corporation, 385 Pa. 352, 356 (1956). Accordingly, following such offer of dedication, the municipality may, if it wishes, accept the offer or reject it as it sees fit. But the private contractual rights resulting as a legal consequence from the implied covenants under which the grantees purchased their respective lots axe in no way affected by the township’s action ox failure to act: Rahn v. Hess, supra, pages 271, 272; Brodt v. Brown, 404 Pa. 391, 393 (1961). This is a private right of property which the original grantee of a lot so purchased, as well as his successors in tide, secures, and is completely independent of the dedication or offer of dedication of the platted streets to public use: Whittaker Appeal, 386 Pa. 403, 408 (1956). The covenant by the grantor to the grantee includes not only the right of the grantee to use the streets as means of ingress and egress, but also the right of the pubic to use the same as access to the lots owned by such grantee: Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co., 240 Pa. 519, 523 (1913). This principle has been cited with approval by our Supreme Court in Bieber v. Zellner, 421 Pa. 444, 447 (1966), and, to the same effect, see Jessop v. Kittanning Borough, 225 Pa. 583, 588 (1909). This right of easement is an essential part of *517 the conveyance to the grantee and will be protected by equity: Brodt v. Brown, supra, at pages 394, 395.
Until 1889, a private offer of dedication of this sort was considered to be irrevocable and to continue for an indefinite period of time, notwithstanding the lack of public acceptance. In that year, however, the Act of May 9, 1889, P. L. 173, 36 PS §1961, was enacted in the following language:
“Any street, lane or alley, laid out by any person or persons in any village or town plot or plan of lots, on lands owned by such person or persons in case the same has not been opened to, or used by, the public for twenty-one years next after the laying out of the same, shall be and have no force and effect and shall not be opened, without the consent of the owner or owners of the land on which the same has been, or shall be, laid out.”
The purpose of this act was to relieve land upon which streets have been laid out by subdivision but not accepted by the public for such use from the servitude thus imposed upon the land by the subdivision: Philadelphia Electric Co. v. Philadelphia, 303 Pa. 422, 432 (1931). The act has uniformly been held to be a statute of limitations: Keifer Appeal, 430 Pa. 491, 495 (1968); Rahn v. Hess, supra, at page 269. This statute fixes the time limit within which the public must accept the implied offer of dedication. If the offer is not accepted within the 21-year period, the public’s right to accept the offer of dedication terminates unless the landowner or owners consent thereto: Milford Borough v. Burnett, 288 Pa. 434, 440 (1927); Philadelphia Electric Co. v. Philadelphia, supra, at page 433.
As in the case of any contractual offer, dedication must be accepted by the municipality for the purpose offered in order to perfect the dedication: Tri City Broadcasting Company v. Howell, 429 Pa. 424, 426 *518 (1968). Such acceptance may be express as, for example, by public ordinance, or it may be implied, as evidenced by public use or by the municipality’s improving and maintaining the street. Acceptance of a portion of a street, longitudinally, does not affect the status of the remainder: Milford Borough v. Burnett, supra, page 441. In the case before us, it is conceded that there has been no express acceptance on the part of Bristol Township of the questioned extension of Curtis Avenue, and hence the inquiry is directed toward the question of implied acceptance.
It has been said that implied acceptance . . may be indicated by some definite authoritative act of the municipality [citations omitted], or by long continued user by the public as a way [citation omitted]”: Milford Borough, supra, at page 438.
One who seeks to establish the public nature of a way has the burden to prove acceptance of the offer to dedicate the street by clear and convincing evidence. Such evidence of acceptance by user should be of the same quality as that necessary to establish a way by prescription. It must be shown by clear and convincing evidence that there has been a long continued use of the street: Whittaker Appeal, supra, at page 410, and there must be evidence of unequivocal acts during a long period of time which show beyond question the intention on the part of the municipality to accept the proposed street as a public highway: Milford Borough v. Burnett, supra, at pages 438, 439.
Mere occasional use, “. . . or inconsequential acts for the convenience of the municipality, will not be sufficient to convert a dedication into a public way”: Milford Borough v. Burnett, supra, at page 439. And the nature of the alleged use must reveal that it is clearly by claim of right by those using the way, and not by virtue of mere acquiescence of the owners of *519 the fee. There must be clear evidence of public use as opposed to private use by lot owners in the area in order that user may establish public acceptance. Use of a paper street by lot owners cannot be termed public use, and is not enough to constitute acceptance of the offer of dedication arising from the sale of lots from a plan. This is clear, since the lot owners otherwise, that is to say, by contract, have the right of such use: Philadelphia Electric Co. v. Philadelphia, supra, at page 432.
Applying these principles of law to the facts established by the evidence here presented, it becomes immediately clear that Curtis Avenue had not been accepted by the public by virtue of user during the 21-year period from 1910 forward.
However, as noted heretofore, two distinct legal rights grow out of the sale of lots according to a plan upon which streets are laid out: the right of the public to accept the offer of dedication, and the concomitant right of private easement in the lot owners over and upon the streets of the subdivision. The Act of 1889 terminates only public rights when acceptance is not accomplished within the 21-year period, and does not affect the private easements. The easement in the lot owner is clearly independent of the dedication of the platted streets to the public use: Rahn v. Hess, supra, at page 271; Cohen v. Simpson Real Estate Corporation, supra, at page 356.
Therefore, it is clear that notwithstanding the absence of the acceptance of Curtis Avenue as a public street, defendants here, as successors in title to lots purchased according to the Headley Manor Plan, have a continuing and permanent right of easement over the disputed area of Curtis Avenue lying between the lots owned by plaintiffs Mannherz and Martin. The nonaction of the public in no way can affect or *520 limit this contractual right: Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co., supra, at pages 522, 523. See also McLaughlin v. Cybulski, 192 Pa. Superior Ct. 7 (1960).
Again, as noted heretofore, the right of easement in the lot owner includes the right of the public to use the way as a means of access to the lot owner’s property. In Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co., supra, at page 523, the court stated that the public use of the lot owner’s easement adds value to the private right of the owner, and “. . . may be clearly said to have been in contemplation of the parties to the covenant.” This is held to be an additional benefit to the lot owner, and not an independent right in the public itself. This principle has been approved as late as 1966 in Bieber v. Zellner, supra, at page 447.
At first blush, it may seem inconsistent to hold, on the one hand, that Curtis Avenue is not a public street, which we do, and on the other hand hold that the public nevertheless has the right to use the street in order to go to and from defendants’ lots. This paradoxical conclusion is explained merely by pointing out that we thus uphold the contractual rights of these defendants, while at the same time we deny to the township the right to open Curtis Avenue as a public street and expend public funds for the improvement and maintenance thereof, unless the township secures the consent of plaintiffs Mannherz and Martin as provided for in the Act of 1889. Should the township determine at a later date that the public good will be best served by changing the status of Curtis Avenue from a private way to a public way, it can always resort to its power of eminent domain, and thus accomplish its purpose after paying these plaintiffs just compensation for the land taken.
April 12, 1971.
DECREE NISI
And now, October 24, 1969, the preliminary injunction entered June 19, 1967, enjoining plaintiffs from obstructing passage over and across Curtis Avenue, formerly Cedar Lane, is herewith entered as a permanent injunction. Plaintiffs, and each of them, are further enjoined from interfering in any manner with defendants’ right of easement and their concomitant right to provide for others the passage of vehicular and pedestrian traffic over and upon the said Curtis Avenue. Costs are placed upon plaintiffs. Unless exceptions are filed hereto within 20 days after notice of filing, this decree nisi shall be entered as the final decree by the prothonotary, upon praecipe.
OPINION OF THE COURT AND DECREE NISI
BODLEY, J.,
— Following argument before the court en banc, this matter is before us upon plaintiffs’ exceptions to the conclusions of law entered by the undersigned chancellor. The chancellor’s findings of fact are not challenged.
The equity action was brought by plaintiffs in an effort to restrain defendants from passing over that portion of their respective abutting lands which, for many years prior to the action, lay under a platted but undedicated and unopened street in Bristol Township known as Curtis Avenue (formerly Cedar Lane). At about the time the equity action was filed, plaintiffs also barricaded the area in question and otherwise obstructed defendants from reaching lands owned by them to the south and west of the properties owned by plaintiffs. This behavior brought about a counterclaim on the part of defendants, asserting a right to use the area in question as a means of ingress and egress to and from their lands and seeking an injunction against plaintiffs’ continuing obstruction of the *522 way. The circumstances were such at the time of defendants’ counter-request for equitable relief that a prehminary injunction was granted restraining plaintiffs from further interfering with the passage of defendants and their agents and servants over the disputed land.
The genesis of the controversy lay in the preparation and recording of a subdivision plan known as “Plan of Headley Manor,” which bears the date of October 31, 1910, and which was recorded on November 3, 1910, in the recorder of deeds office of this county in deed book 356, at page 60. The subdivision plan created 78 building lots of more or less uniform size contained in a roughly rectangular parcel of land owned by one Joseph Morwitz. A number of the building lots fronted upon an existing road known as Edgely Avenue while the remainder of the lots, 64 in number, were to be reached by passage over new streets laid out on the plan. Two such streets, namely Woodside and Pennsylvania Avenues, were to run parallel to the existing Edgely Avenue in a generally easterly-westerly direction and the other two, Curtis Avenue, the subject of this dispute, and Headley Lane were to run from Edgely Avenue and at right angles thereto through Woodside Avenue and Pennsylvania Avenue to the rear of the lots upon the southerly side of Pennsylvania Avenue.
It would appear from the record that many persons purchased lots from this plan over the years and that Edgely Avenue, Woodside Avenue in its entirety, and that portion of Curtis Avenue between Edgely and Woodside Avenues have been opened and used by the public for many years. However, the extension of Curtis Avenue from the southerly side of Woodside Avenue between and upon the lots of ground owned by plaintiffs and proceeding in a southerly direction *523 to bisect the proposed Pennsylvania Avenue, and thence to the rear of the proposed lots situate on the southerly side of that street, has not been opened nor has it been taken over in any fashion by the township; nor have Pennsylvania Avenue and Headley Lane been opened to public use. The lots to the rear of those situate upon the southerly side of Woodside Avenue were not improved over the years, nor was improvement contemplated until 1965, 1966 and 1967, during which time defendants acquired title from time to time to the remainder of the undeveloped lots.
The zoning of this area having been changed by the township in the meantime, defendants in the latter part of November 1966 secured budding permits and began constructing industrial buildings upon their land. In order to gain access to these lands, defendants, their workmen and contractors, daily passed over the unopened bed of Curtis Avenue between the lots of plaintiffs, this being designated as a 50-foot right-of-way upon the said plan of lots.
It is plaintiffs’ position that although the sale of lots from the recorded subdivision plan concededly had the dual effect of representing an offer to dedicate the streets laid out thereon to the public use, and also of being a seller’s covenant with the various purchasers that the said streets would forever remain open for their use and that of the public, nonetheless by virtue of the provisions of the Act of May 9, 1889, P. L. 173, 36 PS §1961, the time within which the offered streets must be accepted by the public was fixed as 21 years. They contend that the said Curtis Avenue not having been accepted and dedicated to the public use by the township, defendants have no present right to use the land in question between the lots of plaintiffs, arguing that the Act *524 of 1889 is a statute of limitations respecting private as well as public rights.
After full hearing, the chancellor filed his adjudication in which the above facts and other matters not pertinent to our present problem were narrated. He concluded as a matter of law that Bristol Township had not expressly accepted the offer of dedication which was implied in the filing of the plan and the sale of lots therefrom, and also that there had been no implied acceptance either by way of definite authoritative acts on the part of the municipality or by way of long continued use on the part of the public as a public way.
The chancellor further concluded that the Act of May 1889 had the effect of terminating the right of the public, without securing the landowners’ consent, to accept the disputed portion of Curtis Avenue after the 21-year period had elapsed from the date of the original offer; that is to say, from the date of the recording of the plot plan. However, he held that the private right of easement existing in all who purchased by reference to the Plan of Headley Manor, being a right independent of the public right, was not affected by the provisions of the Act of 1889, and that therefore defendants here, as well as all other owners of lots in the subdivision, have a continuing and permanent right of easement over the disputed area. Having so held, the chancellor entered a decree nisi making permanent the preliminary injunction adverted to heretofore, restraining plaintiffs from obstructing passage over and across Curtis Avenue, and enjoining plaintiffs from interfering in any fashion with defendants’ right of easement as well as with the concomitant right that existed in members of the public to pass over the Curtis Avenue area in dispute for the purpose of reaching the lots owned by defendants.
Exceptions to the chancellor’s adjudication were *525 duly filed on behalf of plaintiffs. While no exceptions were taken to his findings of fact, plaintiffs did except to his conclusion that the Act of 1889 terminated only public rights after the passage of the 21-year period, thus arguing that we erred in our legal conclusion that the private rights persisted thereafter. We concur with plaintiffs’ opinion that the Act of 1889 is to be construed as a statute of limitations, but cannot accept plaintiffs’ interpretation of Rahn v. Hess, 378 Pa. 264 (1954), which, say plaintiffs, is dispositive of the question in plaintiffs’ favor.
Rahn is a case quite similar to this. Defendants there were owners of lots abutting upon platted but unused and unopened streets. They erected barricades which prevented plaintiffs from passing over such unopened streets, although plaintiffs as well as defendants had purchased certain lots according to the plan of lots which had laid out the streets. The court in Rahn concluded, as did we here, that the passage of the 21-year period terminated the rights of the public in the street unless the consent of the abutting landowners were obtained, but directed, as did we again, the removal of the barricades and restrained defendants from further interfering with plaintiffs’ free and uninterrupted right of passage over the beds of the streets.
While, concededly, certain of the language used by the court in Rahn is somewhat confusing and self-contradictory, the case really stands for the proposition that where an owner of land subdivides it into lots and streets on a plan, and sells lots therefrom, there is an implied grant to, or covenant with, the purchasers that the streets laid out thereon shall be forever open for their use and that of the public; that the right thus passing to the purchaser of the lot is not the mere right that he might use the street, but that all persons may use it.
*526 The court in Rahn also clearly held that the Act of 1889 terminated only public rights in the street and did not terminate the private easements of the lot holders, such easements being in the nature of property rights. The property rights thus acquired include the owner’s right to have members of the public pass over the street for his (the owner’s) benefit since, quite obviously, were it otherwise the right of passage would have very limited value. Holding further that the right which lot owners had acquired in such a case over the paper streets was not dependent upon acceptance of such streets by the public, and that the Act of 1889 did not affect the implied covenant between grantor and grantee, the court affirmed the holding of the chancellor and of the court en banc below.
Our understanding of the holding of Rahn and of the many other cases[1] cited in the adjudication leads us to conclude that the chancellor’s conclusion of law was correct. Accordingly, plaintiffs’ exception to the chancellor’s conclusion is dismissed.
The only other issue raised by plaintiffs before the court en banc is one which, while mentioned in the memorandum of law submitted to the chancellor in support of plaintiffs’ position, appeared to be wholly without legal authority or support in this Commonwealth and hence was not considered by the chancellor in his adjudication.
Plaintiffs urge that there has been a forfeiture of defendants’ contractual right to use the platted streets by reason of their alleged misuse, abuse and alteration of the right. They argue that the streets were conceived and laid out to serve residential areas *527 only and that since Curtis Avenue will now be used to provide access to defendants’ industrial buildings to the rear of plaintiffs’ properties, such use would increase the burden upon the servient tenements to a degree not contemplated by the subdivider nor by the other land owners within the subdivision as they purchased their lots from time to time. As we have indicated we can find no support for this position in the law of this Commonwealth and believe that the argument is without merit.
Generally, forfeiture of an easement is not favored by the law and, once established, it may not be divested except with the consent of the owner of the dominant tenement or by way of operation of law in other instances, as for example in the case of a merger of a dominant and servient tenement where the easement was one of necessity and established by implication, not grant. There is no doubt that the dominant tenement owner’s use of the easement over the servient tenement must be a reasonable one. The law justly restricts such owner’s use of the easement over another’s land and requires that it be such as shall not unreasonably interfere with the servient tenement owner’s rights therein.
While it may likely be true, as suggested , by plaintiffs, that the number and nature of the vehicles traversing Curtis Avenue in order to reach the industrial park area may be greater than and may differ from those which might otherwise have used the street to reach residential properties, had dwellings been constructed to the rear of plaintiffs’ residences, nevertheless we do not find this in any legal sense to represent an unreasonable use of the street, nor do we find it in any legal sense to be an interference with the rights of plaintiffs in the said street.
The general law of easements permits the holder of the right of easement to use it for the purpose intended in all reasonable ways consistent with the *528 right of the owner of the servient tenement. An easement by implication, just as in the case of a grant, carries with it the right to do all things reasonably necessary for the enjoyment of its use: Garan v. Bender, 377 Pa. 487, 489 (1947). See also Benner v. Junker, 190 Pa. 423, 425 (1899), which held that where the change in the use of buildings in plaintiff ’s neighborhood resulted in an increasing volume of traffic over the way (an alley), plaintiff has no cause for complaint so long as the entire use is not appropriated by another. Where the use of such a way is not defined, limited or restricted by covenant, said the court, the use is determined by the needs of the parties entitled to use it. Holding that a change of neighborhood from residential to business is a more or less ordinary and constant process, the court said that the owners of the business properties are entitled to the same free use of the easement as are the owners of residential properties. See also 16 A. L. R. 2d 609; 3 A. L. R. 3d 1256.
Nothing in this record suggests an appropriation of the way by defendants, nor a contemplated use which is in any way out of the ordinary. The rights of plaintiffs in the easement remain intact. In short, we find no legal basis for declaring a forfeiture or termination of defendants’ right of easement in Curtis Avenue.
DECREE
And now, this April 12,1971, the exceptions filed on behalf of plaintiffs to the chancellor’s conclusions of law are dismissed and the prothonotary is directed to enter the decree nisi as the final decree of this court.

 See e.g., Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co., 240 Pa. 519 (1913); Bieber v. Zellner, 421 Pa. 444, 447 (1966); Brodt v. Brown, 404 Pa. 391 (1961); Whittaker Appeal, 386 Pa. 403 (1956); Cohen v. Simpson Real Estate Corp. 385 Pa. 352 (1956); McLaughlin v. Cybulski, 192 Pa. Superior Ct. 7 (1960).