Cox's Incorporated *v.* Snodgrass, Appellant.

Argued October 8, 1952. Before DREW, C. J., STERN, STEARNE, JONES, BELL and CHIDSEY, JJ.

*Harold E. Harper,* with him *L. G. Curry* and *Alter, Wright & Barron,* for appellants.

*T. C. Jones,* for appellee.

OPINION BY MR. JUSTICE CHIDSEY, November 25, 1952:

This is an appeal from a judgment for appellee in an action to quiet title. The land in question, known as Birch Alley, is one block long and is located in the business district of McKeesport. The complaint was filed by the appellee who owns land abutting on Birch Alley. Appellants' land abuts on Malt Alley which is adjacent to Birch Alley. Because Malt Alley is closed on one end, it is necessary to traverse Birch Alley to get to Malt Alley.

Appellee acquired title to its lots on December 1, 1941, by a deed which provided, inter alia, "This conveyance being made subject to . . . any outstanding rights in or to [Birch Alley]. . .". On April 18, 1946, the City of McKeesport enacted an ordinance which provided that Birch Alley be "vacated" in accordance with the provisions of the Act of June 23, 1931, P. L. 932, Art. XXIX, Sec. 2915, as amended, 53 PS §12198-2915. Section 2 of the ordinance authorized the city solicitor to petition the court of common pleas for the appointment of viewers to assess damages and benefits resulting from the vacation of Birch Alley.

Viewers were appointed and on July 3, 1947 they filed a report recommending the vacation of the alley. No exceptions or appeals were filed and this report was subsequently confirmed absolutely. The schedule attached to the viewers' report listed eight properties (but made no reference to the lots owned by appellants), and awarded no benefits and assessed no dam-

ages. On December 6, 1948, appellee filed the complaint in the instant case, in which they alleged (1) that Birch Alley was projected by the Borough (now City) of McKeesport and appeared on the municipal plan prior to the time it appeared as part of a plan of lots from which lots were sold to appellants' predecessor in title, and that the original grantees took title with knowledge that the alley was part of the plan of the Borough of McKeesport; (2) that the necessary effect of the ordinance of April 18, 1946 was to extinguish all public and private rights to use the alley.

Appellants filed an answer in which they denied the material allegations of the complaint and alleged that the original owner of the land had laid out a plan of lots, including Birch Alley, prior to the time that alley appeared on any municipal plan; that the deed to appellee in 1941 was expressly made subject to all outstanding rights, and that the proceeding by the board of viewers as authorized by the ordinance did not have the effect of extinguishing appellants' easement.

When the case came up for trial, appellee presented its case. Then a conference of the parties and the court was held in chambers, where appellants offered to prove that Birch Alley was first laid out by the owners on a plan of lots which was recorded in 1880; that the lots were thereafter sold to appellants' predecessors in title according to the plan of lots; that subsequently Birch Alley was accepted by the municipality and adopted as a public way. Counsel for appellee then stipulated that if the offer were permitted, testimony in support of the offer would be presented. The court then ruled that if such evidence were established, it would not affect the ruling which the court had already indicated, that is, that binding instructions should be given for appellee. At the direction of the court, the jury returned a verdict for the appellee, upon which judgment was entered. Appellants filed mo-

tions for judgment *non obstante veredicto* and for a new trial, both of which were refused.

It is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation: *Chambersburg Shoe Mfg. Co. v. Cumberland Valley Railroad Co.*, 240 Pa. 519, 87 A. 968. See also *O'Donnell v. Pittsburgh*, 234 Pa. 401, 83 A. 314; *O'Donnell v. Porter Company*, 238 Pa. 495, 86 A. 281. Where there has been a *prior* opening or projection by a municipality or a dedication by a private owner and acceptance by a municipality of streets and alleys appearing on a plan of lots, a subsequent purchaser of a lot which is part of the plan of lots obtains no private right to or easement over those streets. The right of the public is paramount (See *Titusville Amusement Co. et al. v. Titusville Iron Works Co. et al.*, 286 Pa. 561, 570, 571, 134 A. 481, and *Gailey et al. v. Wilkinsburg Real Estate Trust Co.*, 283 Pa. 381, 386, 129 A. 445) and the right of the grantee of the lot is limited to an easement by necessity.

Appellants contend that the appellee failed to establish the necessary elements of its case and that the ordinance and the viewers' proceeding pursuant thereto did not extinguish private rights in the alley. The burden of proof in an action to quiet title is on the plaintiff and he must recover on the strength of his own title: *Blumer v. Metropolitan Life Insurance Company et al.*, 362 Pa. 7, 12, 66 A. 2d 245. In order to prevail, appellee was required to prove either that appellants have no private easements arising out of a purchase from a plan of lots on which Birch Alley had been plotted by the private grantor, or that it was

the intent of the City of McKeesport by its ordinance to condemn private rights which might exist in the alley, as well as to relieve the city of its duty to police and maintain that alley.

Appellee offered no evidence whatever in support of the allegation in its complaint that Birch Alley was a part of the municipal plan of the Borough of Mc-Keesport before it was plotted as part of a plan of lots by a grantor in appellants' chain of title. There was a complete absence of proof on the part of the plaintiff on this crucial fact in the determination of the question of the existence or nonexistence of private easements.

Appellant attempted to establish its right to the exclusive use of the alley by reliance upon the ordinance and the viewers' proceeding as an extinguishment or condemnation of any private rights that might exist in that alley. No issues of credibility are involved, and the only question is as to the sufficiency of the proof offered.

Appellee takes the position that prior to the Act of May 28, 1913, P. L. 368, 53 PS §451 (which authorized recovery of damages by the owner of an easement when a street or alley was condemned by a municipality), this Court was required to hold in its decisions that a vacation of a street or alley did not extinguish private easements, because to hold otherwise would have been unconstitutional as a taking of those rights without compensation, and therefore argues that following the passage of that Act a vacating ordinance condemns private rights of easement. In support of this contention that the Act of May 28, 1913, supra, inferentially changed the effect of a vacation to a condemnation, appellee relies on *Eichenlaub v. City of Erie,* 254 Pa. 70, 98 A. 857, and *Gailey v. Wilkinsburg Real Estate Trust Co.,* supra. These cases are inapposite. The *Eichenlaub* case considered the problem

arising when a municipality vacates a highway laid out by the Commonwealth, and held only that the vacation of a public highway for a public purpose would not be restrained on the bill of a plaintiff who alleges no private right to have the highway remain open, but relies only upon his status as a taxpayer and a member of the public, and that a city has the power to completely close a street when it is deemed expedient for the public good. The *Gailey* case, supra, held only (on this point) that an easement could be condemned by a municipality and where compensation is provided by due process of law, there is no constitutional objection.

These cases recognize that a city has the power to condemn an easement. However, appellants do not contend otherwise. The issue in this case is not whether or not the City of McKeesport has the power to condemn an easement but rather the exercise of an unquestioned power.

Section 2915 of the Act of June 23, 1931, supra, provides that a city may vacate a street within the city limits, ". . . whenever deemed expedient for the public good. . .". Section 2801 provides that in the vacating of streets a city may condemn private property. It is clear that under this statute, the City of McKeesport had the power to condemn appellants' easements.

The decisive issue is therefore resolved into the question whether or not the City of McKeesport indicated, by its vacating ordinance, an intent to condemn these easements, as well as to divest itself of the duty of maintaining and providing police protection for this alley.

Section 1 of the ordinance in question provides: "Be it ordained and enacted by the City of McKeesport . . . That BIRCH ALLEY (formerly known as Opera House Alley), a 16-foot alley between WALNUT STREET and

TUBE WORKS STREET, 4th Ward, as shown on the plan laid out for Pittsburgh and McKeesport Car and Locomotive Company, and of record in Plan Book Vol. 6, page 189, be *vacated,* without petition of property owners, in accordance with the provision of the Act of June 23, 1931, P. L. 932, Article XXIX, Section 2915, its amendments and supplements." (Emphasis supplied).

The Act of June 23, 1931, supra, contains no definition of the word "vacate". It is defined in Bouvier's Law Dictionary, 3rd Revision, p. 3385, as follows: "A street is vacated when its character as such is destroyed, and it is thereafter held in private ownership the same as the adjacent lots to which it has accreted; . . .". This definition does not attribute any concept of condemnation to the meaning of the word "vacate".

In *Titusville Amusement Co. et al. v. Titusville Iron Works Co. et al.,* supra, it was held that an ordinance which vacated a street "as a public street" left undisturbed easements arising out of a sale of lots according to a plan of lots. From this case appellee draws the inference that unless the words "vacated as a public street" or other words of limitation are used, "vacate" alone must be given the effect of terminating all rights to use a street or alley, including private rights arising out of contract. Such an inference was never intended, and we cannot adopt such an interpretation of that case. The municipality in the instant case could very readily have definitely expressed in the ordinance an intent to condemn private rights which might exist in the alley, and upon its failure to do so, the word "vacate" will not be construed to mean more than the termination of public rights and duties in the alley and cannot be distorted to mean that contractual rights have been condemned.

The fact that Section 2 of the ordinance authorized the city solicitor to petition the court for the ap-

pointment of viewers is not evidence of an intent to condemn appellants' property since it is merely a compliance with the provisions of Section 2922 of the Act of June 23, 1931, supra.

Appellee and the court below both rely upon the case of *Gailey et al. v. Wilkinsburg Real Estate Trust Co.,* supra, where this Court held that a vacating ordinance extinguished lot owners' easements in the vacated street. That case is distinguishable since there the owners of the easements slept on their rights and did not attempt to use the easement for 32 years, although for 16 years of that period it was used adversely to their right, and only asserted their right after the defendants had spent thousands of dollars in the erection of houses on the site of the easement. As was stated by Justice Kephart in that case, (at p. 392) : "The doctrine of laches applies in full force: . . .". The rule of that case has no bearing upon the factual situation presented in this appeal.

It is self-evident that a board of view acting under an ordinance does not have power to do more than to carry out the intent of a municipality as expressed in that ordinance. In further support of the conclusion that the proceedings by the board of view did not condemn appellants' easements are: (1) the order of court which appointed the viewers made no reference to any condemnation of property; (2) the report of the board of viewers listed only eight properties to which viewers' numbers had been assigned, and made no reference to appellants' property; (3) appellants have received no compensation for their property rights which would be lost if appellee's position is sustained.

Since the appellee failed to make out a case, it is not necessary to decide the legal effect of the above mentioned offer of proof by appellants, stipulation of appellee's counsel, and the ruling thereon in the court below. All of the contentions of the appellee have

been considered; however we deem further discussion unnecessary.

Judgment reversed and here entered for the defendants.