Larry J. ASSALITA and Pamela
M. Assalita, Appellants

v.

CHESTNUT RIDGE HOMEOWNERS
ASSOCIATION, a nonprofit
corporation.

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2004.

Decided Jan. 26, 2005.

Anthony J. Gerace, Jr., State College, for appellants.

Terry J. Williams, State College, for appellee.

BEFORE: McGINLEY, Judge, LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge LEAVITT.

Larry and Pamela Assalita (Assalitas) appeal an order of the Court of Common Pleas of Centre County (trial court) that nullified the actions of the Chestnut Ridge Homeowners Association (Association) to extinguish certain walkway easements in their residential subdivision. The trial court did so because the Association's Board of Directors (Board) had not been properly constituted. However, the trial court also held, and so ordered, that a properly constituted Board would have authority to extinguish the easements by amending the Declaration of Protective Covenants of the Chestnut Ridge Development (Declaration) that governs their subdivision. The Assalitas contend that the pedestrian walkway easements, recorded in their deed, may not be extinguished simply by amending the Declaration.

The Assalitas own and reside on Lot 40 on Hickory Hill Drive in the Chestnut Ridge Residential Subdivision (Chestnut Ridge). As are all homeowners in Chestnut Ridge, they are members of the Association, a nonprofit corporation, the purpose of which is to enforce the terms of the Declaration.[1] All Chestnut Ridge residents are subject to the Declaration and the Bylaws of the Association.[2]

The Final Subdivision Plan (Plan)[3] for Chestnut Ridge provides for a 15–foot wide easement running from Hickory Hill Drive to the State Game Lands along the common boundary of Lots 19, 20, 21, a

---

1. The Declaration establishes covenants relating to the residential subdivision itself, along with common lands and facilities for storm water management and recreational purposes for the benefit of the community. In order to preserve the common lands and certain facilities in the community, the Declaration created the Association.

2. The Stipulation of the parties states, "The Association was created to preserve, maintain and administer the Common Areas." Repro-

duced Record at 75 (R.R. ——). Since the walkway easements are considered part of the Common Areas, it is the duty of the Association to preserve, maintain and administer the walkway easements. *See* Declaration at Article I, Section 1(c). R.R. 79.

3. The Plan, dated April 29, 1987, is recorded in Plat Book Volume 37 at page 66, in the Centre County Recorder's Office.

distance of approximately 300 feet. The Plan specifies that the easement contain a pedestrian walkway five-feet wide, constructed on a bed of stone three-inches deep and with a walkway surface of bark chips four inches in depth. The Plan also provides that signs stating "walkways for pedestrian traffic" were to be placed at each end of the walkway running from Hickory Hill Drive to the State Game Lands.

Since February 2001, the Assalitas have been in discussion with the Association over the use of one of the easements shown on the Plan. They wish to use this particular easement as the way to enter the State Game Lands that are located at the rear of the properties across the street from their home.[4]

The walkways described in the Plan were never constructed by the developer, and Ferguson Township, where Chestnut Ridge is located, did not require that the walkways be completed as part of the Township's final approval for the subdivision.[5] The walkways are non-existent, and the easements are not obvious to the eye. Further, the easements have been impeded by trees, undergrowth and rough ground.[6] Stated otherwise, the "walkways" cannot be distinguished from the private lots they traverse, and for the As-

salitas to use the pedestrian walkway easement in question, they must walk on private property to go around the obstructions.

The Board decided to take action with regard to the unconstructed walkways. After voting to recommend their abandonment, the Board sent a letter to the Chestnut Ridge residents advising them of the Board's recommendation.[7] The letter then requested the residents to respond to two questions:

1. Should the easements be extinguished?

2. Should further study be undertaken concerning the construction of the easements?

R.R. 58. The Board received votes from 140 out of 147 residents. The vast majority voted in favor of extinguishing the easements and against further study.[8] Thereafter, the Board consulted with Ferguson Township, but it expressed no particular interest in the question of whether the easements should be preserved or extinguished.

On February 18, 2003, the Assalitas filed a petition for review of contested corporate action under the Nonprofit Corporation Law of 1988, 15 Pa.C.S. § 5793. The As-

4. The Assalitas also have access to the State Game Lands by way of a public right-of-way on a township road which has frontage on the game lands.

5. Ferguson Township requires surety for the construction of numerous improvements and amenities, but the pedestrian walkway easements were omitted from this surety requirement.

6. At the evidentiary hearing before the trial court, held on July 8, 2003, Mr. Assalita described the particular easement in question leading to the State Game Lands as a progression of mowed grass, a slope containing several well-established trees, and natural over-

growth with sticker bushes. Nothing in the record indicates that any member of the Association intentionally obstructed or obscured the areas designated for pedestrian walkways.

7. The record does not specify the date of the letter. Dr. Joseph Rose, the president of the Association, testified at the evidentiary hearing that he did not recall the exact time when the Association solicited a vote from lot owners regarding the easements.

8. On question one, 119 voted in favor of extinguishing the easements, and 15 were opposed. On question two, 124 voted against further study, and 11 voted in favor of more study.

salitas requested that the court order that: (1) the Association lacked authority to vacate, abandon or extinguish the easements for pedestrian walkways; and (2) the Association had an affirmative duty to preserve and maintain the pedestrian walkway easements. The Assalitas further asserted that the Board had no authority to act on behalf of the Association because it had not been elected in accordance with the terms of the Nonprofit Corporation Law of 1988 and the Association's own Bylaws. The Association filed an answer, denying that it had a duty to preserve the non-existent pedestrian walkway easements. It admitted, however, that its Board had not been elected at an annual meeting of members as required, but, rather, by the prior Board.

After conducting an evidentiary hearing, the trial court granted, in part, the relief requested by the Assalitas.[9] It held that the Board was improperly constituted and, thus, its action to abandon or extinguish the easements was a nullity. However, the trial court also determined that the Association, through its Board, could extinguish and abandon the pedestrian walkway easements by amending the Declaration.[10]

The trial court "ordered" that a properly-constituted Board was able to abandon the walkways by amending the Declaration but, until then, it was ordered to maintain the easements.[11] The Assalitas then appealed to this Court.

On appeal,[12] the Assalitas raise three issues. First, they contend that the Association does not have the power to extinguish the easements, even by amending the Declaration. Second, the Board has a fiduciary duty to maintain and preserve the easements, not destroy them. Third, the Board acted *ultra vires* in its attempt to extinguish the easements because the corporation it serves, *i.e.*, the Association, was established for the purpose of preserving those easements.

The crux of the Assalitas' appeal is that the easements cannot be extinguished without their consent. They contend that when they purchased their home, they acquired not only a fee simple interest in the lot on which their home has been built but also an easement over certain lots in the Chestnut Ridge development. They cannot be deprived of their right to use and

---

**9.** On November 4, 2003, the trial court directed the Assalitas to file a statement of matters complained of on appeal under Pa.R.A.P. 1925(b). The trial court did not supplement its original opinion and order after receiving the filed statement.

**10.** The Declaration provides for an amendment process with respect to the covenants and restrictions in the Declaration as follows:

> The covenants and restrictions of this Declaration shall run with and bind the land and shall inure to the benefit of and be enforceable by the Association, or the Owner of any land subject to this Declaration, their respective legal representatives, heirs, successors and assigns. *Said covenants and restrictions shall continue in full force and effect until and unless the appropriate municipal, county and state authorities regulating the common areas assent to a change in*

whole or in part and unless an instrument signed by the Owners of two-thirds of the Lots has been recorded agreeing to change said covenants and restrictions in whole or in part.

Declaration at Article VII, Section 1 (emphasis added).

**11.** The trial court did not merely hold in its opinion that the Board could abandon the easements by amending the Declaration; it made that legal holding ¶ 1 of its order of September 24, 2003.

**12.** Our scope of review is limited to determining whether the trial court abused its discretion, committed an error of law or reached a decision which lacks substantial evidentiary support. *Mulrine v. Pocono Highland Community Association, Inc.*, 151 Pa.Cmwlth. 146, 616 A.2d 188, 189 n. 3 (1992).

enjoy these easements without their consent or compensation. Amending the Declaration cannot serve as the mechanism for depriving them of their property rights, including the easements.

 Under Pennsylvania law, the easements at issue are easements appurtenant.[13] The lands bordering the plotted pedestrian walkways to the State Game Lands have been made servient tenements burdened with the 15–foot easements. Thus, the dominant tenements are the remaining plots owned by the members of the Association. This existence of a servient tenement for the beneficial use of a dominant tenement is a prerequisite to the creation of an easement appurtenant.

> Creation of an easement appurtenant is accomplished by reserving unto the grantor an easement or right of way over the land conveyed, said right of way being intended to benefit other lands retained by the grantor. This reservation is conceptually fused with the land it benefits and passes with the land if there is a subsequent conveyance. An expressly created easement appurtenant can conceivably last forever.

*Brady v. Yodanza,* 493 Pa. 186, 189, 425 A.2d 726, 727 (1981).[14] Further, the ease-ment passes by operation of law. Unless the grantors limit or make personal the right of way, it is an appurtenance to the land it benefits. *Id.* at 190–191, 425 A.2d at 728.

The easements in the present case are addressed in several provisions of the Declaration. The Preamble states that

> Developer desires to develop [in Chestnut Ridge] a residential subdivision together with common lands and facilities for stormwater management and recreational purposes for the benefit of such community.

Declaration at Preamble, ¶ 2. R.R. 78. The "common lands" are defined, in pertinent part, as

> all areas designated for recreational use for passage and right of way within the subdivision ... easements and rights-of-way ... as the same are shown on the recorded subdivision plats of the properties. Said areas are intended to be devoted to the common use and enjoyment of the members of the Association.

Declaration at Article I, Section 1, R.R. 79. Further, Article IV, Section 1 of the Declaration states that

> It is settled law in Pennsylvania that an owner of land may arrange it as he pleases, doing no injury to others, and that any ways or other privileges which he may provide for the necessary or convenient use of the different parts of the land, or of structures on it, will remain as servitudes upon the parts subjected to them by him, in the hands of subsequent purchasers with notice, or when the easements are continuous and apparent. The easements thus created, being for the specific use of the lands for which they were provided, become appurtenances of those dominant estates, and require no deed or writing to support them; they pass by a conveyance of the estates to which they are appurtenant.
> *Brady,* 493 Pa. at 190, 425 A.2d at 728.

---

13. Generally,
> An easement is a liberty, privilege, or advantage which one may have in the lands of another without profit.... It may be merely negative ... and may be created by a covenant or agreement not to use land in a certain way:.... But it cannot be an estate or interest in the land itself, or a right to any part of it. An easement is a right in the owner of one parcel of land by reason of such ownership to use the land of another for a special purpose not inconsistent with a general property in the owner.

*Clements v. Sannuti,* 356 Pa. 63, 65–66, 51 A.2d 697, 698 (1947) (citations omitted) (emphasis omitted).

14. *Brady* also contains pertinent language relating to the nature of the Developer's grant:

every member shall have a right and easement of enjoyment in and to the Common Areas of the recorded subdivision plat of which his Lot is a part, and *such easement shall be appurtenant to and shall pass with the title to every lot.*

Declaration at Article IV, Section 1, R.R. 81 (emphasis added). Notably, the Declaration does not provide that the easements may be extinguished; the Association's Articles of Incorporation and its Bylaws are similarly lacking in authority to extinguish the easements.

▆▆▆▆ The Declaration speaks to the right of Chestnut Ridge residents to enjoy the easements, but the Declaration did not create the easements. Rather, the easements were established by having been plotted on the filed and recorded Plan. As grantees of lots sold in accordance with the Plan, the Chestnut Ridge residents received their easement rights by conveyance. As our Supreme Court has stated,

[i]t is well settled that the grantee of a lot, which is sold according to a plan of lots on which streets or alleys not previously opened or projected as a public street are plotted out by the grantor, acquires an easement over those streets and alleys as a private right of property arising out of the grant, of which he cannot be deprived without compensation.

*Cox's Inc. v. Snodgrass,* 372 Pa. 148, 152, 92 A.2d 540, 541 (1952). Further, "[a]n easement by reference to a map or plan is not an express easement but rather an easement by implication." *Pocono High-*

*land Lake Estates Property Owners Association v. Palys,* 56 Pa. D. & C. 4th 129, 132 (2002), *aff'd,* 822 A.2d 879 (Pa.Cmwlth. 2003). These principles also apply to a footpath. *Id.*

The Assalitas' deed makes the Plan a part of the deed itself, and this constitutes a dedication of the walkways shown on the Plan to a use as public ways. Our Supreme Court has explained that,

where an owner of land subdivides it into lots and streets on a plan and sells his lots accordingly, there is an implied grant or covenant to the purchaser that the street shall be forever open to the use of the public and operates as a dedication of them to public use. The right passing to the purchaser is not the mere right that he may use the street, but that all persons may use it.

*Rahn v. Hess,* 378 Pa. 264, 268, 106 A.2d 461, 463 (1954). The Supreme Court has further recognized

a clear distinction between the public right of passage over dedicated streets and the individual rights of property involved in such dedication. The latter are private contractual rights resulting as a legal consequence from the implied covenants under which the grantees purchased. . . .

*Id.* at 271, 106 A.2d at 464.

▆▆▆▆ The Assalitas' deed and the Declaration must be construed together as a whole.[15] They do not support the trial court's conclusion, and order, that the easements, conveyed to the Assalitas by

---

**15.** The Declaration gives lot owners a private contractual right in the walkway easements. We must note that the rules of construction for contracts contain, "a general rule of law that where one contract refers to and incorporates the provisions of another both shall be construed together. . . . [E]ven where there is no specific reference to a prior agreement or prior agreements, several contracts shall be interpreted as a whole and together." *Shehadi v. Northeastern National Bank of Pennsylvania,* 474 Pa. 232, 236, 378 A.2d 304, 306 (1977). Moreover, "[i]t is fundamental that one part of a contract cannot be so interpreted as to annul another part and that writings which comprise an agreement must be interpreted as a whole." *Id.*

deed, can be annulled by amending the Declaration. The trial court did not consider the difference between the easement and a constructed walkway.[16] An easement is an abstract property interest that is legally protected. By contrast, the walkway to be constructed on a stone bed with a wood chip surface is concrete. It may be that the Association cannot be required to construct the walkway contemplated by the developer but only to maintain and preserve that which already exists, *i.e.*, the abstract right-of-way. This is not to say, however, that the easements on which the walkways were to be built can be extinguished by an act of the Association.

The issues raised by the Assalitas are important. However, we decline to decide them because to do so would render our decision an advisory opinion. *See Borough of Marcus Hook v. Pennsylvania Municipal Retirement Board,* 720 A.2d 803, 804 (Pa.Cmwlth.1998) ("It is well established that a judicial determination that is unnecessary to decide an actual dispute constitutes an advisory opinion and has no legal effect.... In general, the courts of this Commonwealth may not exercise jurisdiction to decide issue that do not determine the resolution of an actual case or controversy."). All parties agree that the Board's actions purporting to abolish the easements were null and void because the Board was not properly constituted.[17] The trial court's order defining the scope of the Association's authority was premature since a properly constituted Board has not yet acted. For that reason, we must vacate that portion of the trial court's order providing that the Association had authority to extinguish the easements.

In accordance with the foregoing, we vacate the trial court's order holding that the Association, by its Board, had authori-

**16.** The trial court assumed that the provision for amending the "restrictions and covenants" in the Declaration applied to the easements. It did not explain its reasoning for finding an easement to be a covenant or restriction. Even so, this does not mean a property interest expressed in a deed can be abrogated by amending the Declaration.

**17.** Section 5725(a) of the Nonprofit Corporation Law of 1988 states, "directors ... shall be elected by the members." 15 Pa.C.S. § 5725(a). In addition it provides that directors may be selected pursuant to the by-laws of the nonprofit corporation. 15 Pa.C.S. § 5725(b) provides:

> If a bylaw adopted by the members so provides, directors may be elected, appointed, designated or otherwise selected by such person or persons or by such method or methods as shall be fixed by, or in the manner provided in, such bylaw.

While bylaws of a nonprofit corporation may provide for the number and time of member meetings, it also provides that director elections by members will occur:

> [u]nless otherwise provided in a bylaw adopted by the members at least one meeting of the members of a corporation which has members, as such, entitled to vote, shall be held in each calendar year for the election of directors....

15 Pa.C.S. § 5755(a).

Section 4–04 of the Association's Bylaws provides that "Directors will be elected for a term of two (2) years each." In addition, the bylaws on the cumulative voting rights of the members references their election of directors:

> In all elections for directors each Member entitled to vote will have the right to cumulate such vote and to give one candidate a number of votes equal to such vote multiplied by the number of Directors to be elected.

Section 3.11 of the Association Bylaws, Notes of Testimony, Petitioner's Exhibit 4. In short, the Association has not adopted bylaws, pursuant to 15 Pa.C.S. § 5725(b), that would allow its Board to be elected by directors. At the hearing before the trial court, Dr. Joseph Rose, the current president of the Board, testified that neither he nor the other current members of the Board had been elected at a general membership meeting but, rather, by the Board.

ty to extinguish and abandon the pedestrian walkway easements by amendment to the Declaration.[18] We affirm that part of the trial court's order nullifying the Association's actions to extinguish the easement and confirming the Association's ongoing duty to preserve and maintain the easements.

ordered that the Chestnut Ridge Homeowner Association has authority to extinguish and abandon the pedestrian walkway easements by amendment to the Declaration of Protective Covenants of the Chestnut Ridge Development. In all other respects, the order is affirmed.

## ORDER

AND NOW, this 26th day of January, 2005, the order of the Court of Common Pleas of Centre County dated September 24, 2003, is affirmed in part and vacated in part. The order is vacated insofar as it

18. Because we vacate this part of the trial court's order we need not address the Assalitas' other legal arguments, *i.e.*, that the Association's action was *ultra vires* and that the Board violated its fiduciary duty.