J-S84024-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| STANLEY BRUZGULIS, RALPH A. MOYER, JR., AND CAROL J. MOYER | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | |
| LANDOWNERS WILDLIFE PROTECTIVE ASSOCIATION | : : | No. 952 MDA 2017 |
| Appellant | : : | |

Appeal from the Judgment Entered June 13, 2017
In the Court of Common Pleas of Luzerne County Civil Division at No(s):
2222-2015

BEFORE:  SHOGAN, J., LAZARUS, J., and OTT, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED MAY 04, 2018**

Landowners Wildlife Protective Association ("LOWPA") appeals from the judgment, entered in the Court of Common Pleas of Luzerne County, granting the complaint to quiet title and for declaratory judgment filed by Stanley Bruzgulis, Ralph A. Moyer, Jr., and Carol J. Moyer (collectively, "Plaintiffs") and denying LOWPA's counterclaim to quiet title.  Upon careful review, we affirm.

In 2011, the Moyers filed an action to quiet title and for a declaratory judgment with regard to a disputed 6.9 acre plot of land located on the southern border of three contiguous parcels of land owned by the Moyers and the northern border of a parcel owned by LOWPA.  After a full hearing on the matter, the trial court dismissed the complaint due to failure to join an indispensable party, Bruzgulis, who owns another tract of property abutting

the northern border of LOWPA's parcel. Subsequently, on February 26, 2015, the Moyers, who now joined Bruzgulis as an additional plaintiff, filed a complaint seeking the identical relief as in the original action. Plaintiffs filed an amended complaint on May 12, 2015. LOWPA filed an answer, new matter, and counterclaim alleging the same defenses and counterclaim for adverse possession as in the original action. On December 23, 2015, the parties entered into a stipulation, agreeing to have the court make a determination based solely on the testimony and exhibits presented in the prior suit. On January 10, 2017, the trial court issued an order finding that: (1) Plaintiffs were in possession of the disputed property and (2) LOWPA failed to establish the requisite elements of adverse possession. Post-trial motions filed by LOWPA were denied and, on June 13, 2017, the Prothonotary entered judgment in favor of Plaintiffs. This timely appeal follows, in which LOWPA raises the following issues for our review:

1. Did the [trial] court err in determining that the evidence demonstrated that [the Moyers] were in possession of a disputed parcel of land?

2. Did the [trial] court err in determining that [LOWPA] did not establish that it had adverse possession of a disputed parcel of land?

Brief of Appellants, at 5.

LOWPA claims that the trial court erred in determining that the Moyers were in possession of the disputed parcel for purposes of establishing the court's jurisdiction to adjudicate this quiet title action. Rather, LOWPA asserts

that it is in possession of the land by virtue of adverse possession. In support of that claim, LOWPA cites the following factors: (1) Mr. Moyer's testimony that he entered the disputed parcel at LOWPA's invitation; (2) Bruzgulis has recognized the barbed wire fence[1] as the border of LOWPA's property; (3) the Moyers' predecessors-in-title did not dispute that the barbed wire fence was the boundary; and (4) LOWPA has used the disputed area for hunting and timbering and has posted the barbed-wire boundary.

Additionally, LOWPA argues that the court erred in declining to award the disputed parcel to it by virtue of adverse possession. LOWPA argues that over the years, the conduct of the parties has established a consentable boundary at the barbed-wire fence line by acquiescence. Specifically, LOWPA asserts that it has treated the disputed area as its own by hunting, timbering and granting permission to others for the use of the land. LOWPA also asserts that, since 1948, it has posted no trespassing signs along the barbed-wire fence line.

We begin by noting the following legal precepts applicable to the instant dispute.

> A plaintiff in an action to quiet title must be in possession of the land in controversy; if he is not in possession, his sole remedy is an action in ejectment. ***Plauchak v. Boling***, [] 653 A.2d 671, 674 ([Pa. Super.] 1995). An action to quiet title may be brought only where an action in ejectment will not lie. ***Id.***; Pa.R.C.P.

---

[1] The "barbed-wire fence" referred to by the parties is not an intact fence. Rather, it consists of "old traces of barbed wire . . . grown into the trees over time [that are] definitely remnants of a barb[ed-]wire fence line that ran through there at one time." N.T. Trial, 11/25/13, at 37.

1061(b)(2). "Ejectment, being a possessory action, can be maintained if the plaintiff has a right to immediate possession with the concomitant right to demand that the defendant vacate the land." *Id.* An out-of-possession plaintiff may not maintain an action to quiet title because it constitutes an enlargement of that party's substantive rights as defined by the statute, and thus exceeds the court's jurisdiction to proceed. *Id.*; accord *Sutton v. Miller*, [] 592 A.2d 83, 88–89 ([Pa. Super.] 1991).

There is no precise definition of what constitutes possession of real property; the determination of possession is depend[e]nt upon the facts of each case, and to a large extent upon the character of the land in question. *Schimp v. Allaman*, [] 659 A.2d 1032 ([Pa. Super.] 1995). In general, however, actual possession of land means dominion over the property; it is not the equivalent of occupancy. *Glenn v. Shuey*, [] 595 A.2d 606 ([Pa. Super.] 1991). Thus, the trial court must determine which party exercised dominion and control over the property before determining what is the proper form of action in such a case.

*Moore v. Duran*, 687 A.2d 822, 827 (Pa. Super. 1996). Actual possession is presumed to be in him who has the record title. *Overly v. Hixson*, 82 A.2d 573, 575 (Pa. Super. 1951).

The question of where a boundary line is located is one for the trier of fact. *Murrer v. American Oil Co.*, 359 A.2d 817 (Pa. Super. 1976). In an action to quiet title, the burden of proof is on the plaintiff to prove, by a fair preponderance of the evidence, that the actual boundaries of its property are located so as to include the disputed area. *Cox's Inc. v. Snodgrass*, 92 A.2d 540, 542 (Pa. 1952); *Poffenberger v. Goldstein*, 776 A.2d 1037, 1021 (Pa. Cmwlth. 2001). Our review of a decision in a quiet title action is confined to determining whether the trial court's findings are supported by competent evidence and its decree is in conformity with applicable law. *Moore v. Moore*, 921 A.2d 1, 4 (Pa. Super. 2007), citing *Corbin v. Cowan*, 716 A.2d

- 4 -

614, 617 (Pa. Super. 1998). We will not reverse its decree on appeal unless the court committed legal error or its findings are not supported by credible evidence. *See id.*

One who claims title by adverse possession must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *Baylor v. Soska*, 658 A.2d 743, 744 (Pa. 1995), citing *Conneaut Lake Park, Inc. v. Klingensmith*, 66 A.2d 828 (Pa. 1949). Each of these elements must exist; otherwise, the possession will not confer title. *Smith v. Peterman*, 397 A.2d 793, 796 (Pa. Super. 1978). "[O]nly acts signifying permanent occupation of the land and done continuously for a twenty-one year period will confer adverse possession." *Id.*

Here, the disputed parcel consists largely of wooded acreage. To adversely claim woodland property, more than sporadic use of the land is required, no matter how often such sporadic use is repeated. *Hoover v. Jackson*, 524 A.2d 1367, 1369 (Pa. Super. 1987); *Bigham v. Wenschhof*, 441 A.2d 391, 393 (Pa. Super. 1982). Thus, occasional timbering and/or hunting, being necessarily sporadic, are, alone, inadequate to establish title by adverse possession. *Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926, 929 (Pa. Super. 1988). Rather,

> [t]o maintain an actual possession to woodland as such, it is necessary that the person entering take actual possession by residence or cultivation, of a part of the tract to which the woodland belongs. *Hole v. Rittenhouse*, 37 Pa. 116 [(1860)]; *Olewine v. Messmore*, [] [18 A. 495 ([Pa.] 1889)]. Actual possession may be taken by enclosing and cultivating, without residence[,] or by residence without cultivation, under a bona fide

- 5 -

claim where there is a designation of the boundaries with the ordinary use of the woodland. This possession accomplishes an ouster, and is entirely different from the occasional or temporary use of the land without an intention to permanently cultivate or reside thereon or use it in some other manner consistent with the condition of the property.

*Niles*, 545 A.2d at 929. The burden of proving adverse possession rests upon the claimant by credible, clear and definitive proof. *Johnson v. Tele-Media Co. of McKean Cty.*, 90 A.3d 736, 740–41 (Pa. Super. 2014).

Here, the trial court concluded that "the competent, believable, and credible evidence of record demonstrates the Plaintiffs are in possession of the disputed property" and, further, that LOWPA "has not established the requisite elements of adverse possession[.]" Trial Court Order, 1/10/17. Accordingly, the court directed that a corrective deed[2] be entered by the parties reflecting the court's determination that title to the disputed parcel lies in the Plaintiffs. After our review, we can discern no abuse of discretion or error of law.

We begin by noting that the trial court found the primary theory advanced by LOWPA on appeal, that of a consentable boundary[3] by acquiescence, to be waived. Accordingly, it did not address the claim in its opinion. On appeal, Plaintiffs similarly assert that LOWPA has waived this

_____

[2] A corrective deed is necessary in this matter because, in 1997, LOWPA filed a deed purporting to claim, via adverse possession, the land between the "Pasonick line" and the barbed-wire fence.

[3] The doctrine at issue is referred to interchangeably as "consentable lines" and "consentable boundary."

theory of relief for failure to raise it in its new matter and/or counterclaim. We agree.

LOWPA raised the theory of adverse possession in its new matter and in its counterclaim. Specifically, LOWPA alleged that it "has had actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the [disputed tract] for more than twenty[-]one years[.]" LOWPA New Matter, 6/11/15, at 38; LOWPA Counterclaim, 6/11/15, at 40. LOWPA did not, however, raise the theory of consentable boundaries by acquiescence. Only after trial, in its proposed conclusions of law, did LOWPA first advance that theory. Although the doctrinal roots of boundary by acquiescence are grounded in adverse possession theory, *Zeglin v. Gahagen*, 812 A.2d 558, 562 (Pa. 2002), it has emerged as a separate and distinct theory from that of traditional adverse possession. *Niles v. Fall Creek Hunting Club, Inc.*, 545 A.2d 926, 930 (Pa. Super. 1988). In order to establish a binding consentable line by recognition and acquiescence, a landowner must prove that: (1) each party has claimed the land on his side of the line as his own; and (2) this occupation has occurred for the statutory period of twenty-one years. *Plauchak v. Boling*, 653 A.2d 671, 675 (Pa. Super. 1995). In contrast, in order to establish title by adverse possession, a claimant must prove actual, continuous, exclusive, visible, notorious, distinct and hostile possession of the land for twenty-one years. *Johnson*, *supra*. The two doctrines require distinct elements of proof; a claimant may prevail on one theory, while failing to prove the other. *See Niles*, *supra* (finding evidence insufficient to

establish adverse possession, but sufficient to establish consentable boundary by recognition and acquiescence). Accordingly, because LOWPA did not raise the theory of consentable boundary until after trial, we find it to be waived. Pa.R.A.P. 302.

Having framed the specific claims at issue in this matter, we now proceed with a review of the evidence adduced at trial. Plaintiffs presented the expert testimony of Francis Miller, a licensed surveyor employed by the Pennsylvania Game Commission. Miller testified that he was contacted by Mr. Moyer in 2006 to perform a survey in order to establish the boundary line between the Moyers' properties and the parcel belonging to LOWPA. Miller testified that he reviewed deeds obtained from the courthouse and walked the property with Mr. Moyer, who showed him the line that he believed demarcated his properties from LOWPA's. Miller testified that the previous deeds to the LOWPA property did not contain bearings and distances, but merely described the property as consisting of "50 acres." Miller testified that, when he followed the deeds in the LOWPA chain back, they "had a description that described a property that you couldn't create, but it always said 50 acres." N.T. Trial, 11/25/13, at 13. Miller testified that the discrepancy created by the "50 acres" description "was always a concern of [his]" when attempting to recreate LOWPA's property on paper. *Id.* at 12-13. Miller testified that the survey he ultimately produced in 2006 was an attempt to "split the difference" between where Moyer and LOWPA each believed the boundary to be in order to resolve the boundary dispute between the parties, and because the 2006

line was an attempt to produce a compromise, it did not actually represent what he ultimately came to conclude was the proper boundary line pursuant to Plaintiffs' deeds.

After the Moyers and LOWPA were unable to agree on a compromise boundary line, Miller performed additional research beginning in 2011. Using county assessment records, additional deed research, and information gleaned from two previous surveys,[4] Miller returned to the property and located rebar and iron pin boundary markers on the line Mr. Moyer had believed to be the boundary. He also determined that the Moyers' property had senior title. Finally, prior deeds in the chain of title enabled Miller to reconcile his previous confusion stemming from the description in deeds in the LOWPA chain of title stating that the property consisted of approximately 50 acres. Miller had long believed that LOWPA's current property was less than 50 acres. Miller discovered that an 1880 deed had transferred into the Plaintiffs' chain of title 20 acres of a 57-acre property that encompassed what became the LOWPA tract. Subtracting 20 acres from 57 acres, Miller arrived at 37 acres, which is just one acre less than Miller's most recent survey attributes to the LOWPA property. Regarding the barbed-wire fence line claimed by LOWPA to be the boundary, Miller testified that "the fence is not in

_____

[4] The previous surveys referenced by Miller were performed by Michael Pinjar in 1967 and by Michael Pasonick in 1981. Miller ultimately concluded that the "Pasonick line" was the proper boundary between the Moyer and LOWPA properties.

a straight line, which is uncommon if they're going to use that for a boundary." *Id.* at 40.

Ralph A. Moyer, Jr., testified that he and his family use the disputed area for hunting and walking. He testified that, in the late 1950s or early 1960s, he built a tree stand that sits on the disputed property. Moyer testified that LOWPA timbered its property in the 1980s, but did not go north of the "Pasonick line." However, Moyer testified that, within the last 15 years, LOWPA began cutting trees down within the disputed area. Moyer also testified that, previously, LOWPA had posted on the Pasonick line. However, Moyer stated that within the last ten years, LOWPA began posting on the barbed-wire fence line. *Id.* at 105. Moyer testified that he always believed his property included the disputed tract of land.

LOWPA did not present expert testimony from a surveyor. Rather, it presented the lay testimony of three long-time members of the organization. William Jones testified that he had been hunting on the disputed parcel for approximately 43 years and always understood the barbed-wire fence line to be the northern boundary of LOWPA's property.[5] He testified that LOWPA has

---

[5] During Jones' testimony, counsel for LOWPA introduced into evidence photographs taken by Jones the week before trial of what remains of the barbed-wire fence. The photographs, however, are not contained in the certified record. "Our review is limited to those facts which are contained in the certified record" and what is not contained in the certified record "does not exist for purposes of our review." *Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super. 2006) (citations omitted).

always posted the barbed-wire fence line and never the Pasonick line. Jones also testified that members of LOWPA timbered the disputed property between 1989 and 1993. Jones further testified that LOWPA had not farmed or planted in the disputed area and that he had, in the past, seen members of Plaintiffs' families on the disputed tract of land.

Raymond Clymer, another member of LOWPA, testified that when he was 16, his father showed him the barbed-wire fence and told him "as long as you walk the barb[ed-]wire line and where there's occasional posters, you'll always be alright." N.T. Trial, 11/25/13, at 161. Clymer testified that, to his recollection, the barbed-wire fence had been continually posted by LOWPA since 1950.

Charles Best, also a LOWPA member, testified that he began hunting with LOWPA in 1950 and that his father showed him the barbed-wire fence and told him it was the boundary line of LOWPA's property. Best testified that "every so many years" the barbed-wire fence would be posted by LOWPA members and that Plaintiffs never posted the Pasonick line. He further stated that Plaintiffs and LOWPA allowed each other to use their respective land for hunting. Best also testified that a surveyor once told him that "the acreages were never right" on LOWPA's old deeds. Best acknowledged that there were stakes located along the Pasonick line.

In light of the foregoing evidence, we can discern no abuse of discretion on the part of the trial court in concluding that Plaintiffs were in actual possession of the disputed land as title-holders of record. *See Overly*, *supra*

(actual possession presumed to be in him who has record title).  The sole expert testimony presented at trial was that of surveyor Miller, who averred that the correct boundary of the Plaintiffs' property was the southernmost, or "Pasonick," line.  This evidence corroborated Ralph Moyer, Jr.'s testimony, deemed credible by the court, regarding his long-held understanding as to the correct boundary line.

In addition, LOWPA failed to produce sufficient evidence to prove that it acquired title by adverse possession.  LOWPA was unable to demonstrate that it did anything more than engage in sporadic use of the disputed parcel.  While the testimony showed that members of LOWPA occasionally hunted and timbered the property, such use is inadequate to establish title by adverse possession.  **See Niles**, **supra**.  LOWPA neither resided on nor cultivated the land, either of which is a prerequisite to establishing actual possession for purposes of adverse possession of woodland.  **See id.**

Based on the foregoing, the trial court did not commit an error of law or an abuse of discretion in entering judgment in favor of the Plaintiffs.

Lastly, LOWPA asserts that the verdict of the trial court was against the weight of the evidence.  LOWPA properly preserved this claim by raising it in its post-trial motion and Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  **See** Pa.R.C.P. 227.1; Pa.R.A.P. 1925(b)(4)(vii).

> Appellate review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.  Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration

to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013). A new trial will be granted on the grounds that the verdict is against the weight of the evidence only where the verdict is so contrary to the evidence it shocks one's sense of justice. *Thomas Jefferson Univ. v. Wapner*, 903 A.2d 565, 576 (Pa. Super. 2006) (citation omitted).

We begin by noting that LOWPA's argument on this claim, consisting of less than one full page of text, is little more than a one-sentence summary of its adverse possession argument, followed by a conclusory statement that the court's verdict shocks one's sense of justice. *See* Brief of Appellant, at 23. Generally, the failure to properly develop an appellate argument results in waiver of the claim. *See* Pa.R.A.P. 2119(a). *See also Commonwealth v. Ellis*, 700 A.2d 948, 957 (Pa. Super. 1997) (failure to develop any argument or cite any authority results in waiver). However, because our ability to conduct meaningful appellate review is not substantially hampered, we decline to find waiver.

The trial court reviewed LOWPA's weight claim and concluded as follows:

The record, in our judgment, substantially supports our decision. [LOWPA] waived the affirmative defense of consentable boundary and failed to establish any adverse claim. The decision is not contrary to the evidence and certainly does not shock our sense of justice. [LOWPA] has failed to identify anything in the record in support of the claimed error, other than to the extent it

- 13 -

disagrees with our credibility determinations.  Accordingly, we find
no merit in [LOWPA's] claim that the verdict is against the weight
of the evidence[,] warranting a new trial.

Trial Court Opinion, 9/7/17, at 13.

Upon review of the record as a whole, we cannot conclude that the trial court abused its discretion in concluding that the verdict was not contrary to the weight of the evidence.  The trial court listened to all of the testimony and made credibility determinations based on its ability to observe the witnesses at trial.  A fact-finder is free to believe all, part, or none of the evidence presented.  ***Commonwealth v. Mosley***, 114 A.3d 1072, 1087 (Pa. Super. 2015) (citations omitted).  An appellate court cannot, on a weight of the evidence review, replace the fact-finder's determination of credibility with its own determination.  ***See Commonwealth v. Blackham***, 909 A.2d 315, 320 (Pa. Super. 2006).  Accordingly, we are bound by the trial court's credibility determinations, which are supported in the record.  The trial court acted within its discretion in concluding that its verdict did not shock the conscience.  ***Wapner***, ***supra***.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/4/2018

- 14 -